42 P.3d 6

Kelly Louise BLAKE, Petitioner,

v.

The Honorable Jonathan H. SCHWARTZ, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

State of Arizona; Arizona Psychiatric Security Review Board, Real Parties in Interest.

No. 1 CA–SA 01–0168.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 5, 2002.

As Amended Feb. 21, 2002.

James J. Haas, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, Attorneys for Petitioner.

Richard M. Romley, Maricopa County Attorney by E. Catherine Leisch, Deputy County Attorney, Phoenix, Attorneys for Real Parties in Interest.

Janet Napolitano, Arizona Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Toni Valadez Kozub, Assistant Attorney General, Phoenix Attorneys for Real Parties in Interest.

**OPINION**

BARKER, Judge.

¶ 1 Kelly Louise Blake was found guilty except insane ("GEI") of murder, attempted murder, kidnapping, and arson of an occupied structure. The trial court committed Blake to the jurisdiction of the Psychiatric Security Review Board ("PSRB") pursuant to Arizona Revised Statutes ("A.R.S.") section 13–3994 (2001). Blake petitioned for review of the superior court's decision, arguing that A.R.S. § 13–3994(A), (F), and (G) are unconstitutional. The issues are as follows: (1) whether A.R.S. § 13–3994(A), (F), and (G) require a mandatory 120–day period of confinement, and (2) if so, whether a 120–day confinement period is constitutional.

¶ 2 We conclude that the statute allows the medical director to request a release hearing within the 120–day period referenced. The statute is constitutional on that basis. Accordingly, we do not reach the issue of whether an initial 120–day period without the prospect of release, for a GEI defendant guilty of a crime involving death or serious

physical injury, would or would not be constitutional.

¶ 3 For the reasons that follow, we accept jurisdiction of this special action and deny relief.

### Factual and Procedural History

¶ 4 In March 1998, Blake lured her three children into a shed. She then poured gasoline on them and set fire to her children and herself.[1] The fire killed two of her children. On June 19, 2001, the trial court, in a trial by submission, found Blake guilty except insane of murder, attempted murder and the other charges referenced. The trial court placed Blake under the jurisdiction of the PSRB, pursuant to A.R.S. § 13–3994(D), for the duration of her natural life.

¶ 5 Prior to commitment to the PSRB, an attorney sought to intervene on Blake's behalf and have portions of A.R.S. § 13–3994 declared unconstitutional. The trial judge denied the motion to intervene, but allowed Blake's defense lawyer to assert the same arguments. The trial judge then denied the motion on its merits; he held that the statute was constitutional. This special action followed.

¶ 6 The state's initial response to the special action was limited solely to the issue of jurisdiction. In reply, Blake asserted that PSRB had no administrative procedure allowing for a release hearing until 120 days after commitment. By subsequent order, we accepted jurisdiction and directed PSRB to brief this matter on its merits.

¶ 7 Special action jurisdiction is highly discretionary. *See State ex rel. McDougall v. Superior Court*, 186 Ariz. 218, 219, 920 P.2d 784, 785 (App.1996). Special action jurisdiction is appropriate "where an issue is one of first impression of a purely legal question, is of statewide importance, and is likely to arise again." *Vo v. Superior Court*, 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992). Additionally, special action jur-

isdiction may be considered when there is no adequate remedy by way of appeal. *Luis A. v. Bayham–Lesselyong ex rel. County of Maricopa*, 197 Ariz. 451, 453, 4 P.3d 994, 996 (App.2000).

¶ 8 Special action jurisdiction is appropriate here because this case raises an issue of statewide importance, is likely to recur, and turns solely on legal principles. Additionally, because the relief requested applies to the first 120 days after judgment, there is no adequate remedy by way of appeal.

### Discussion

¶ 9 As noted, the issue is whether A.R.S. § 13–3994(A), (F), and (G) require a mandatory 120–day period of confinement. The constitutional argument is that if the 120–day period is mandatory, it may deprive a defendant of his or her due process rights. *See Jones v. United States*, 463 U.S. 354, 356–57, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) (determining that a 50–day confinement period was constitutional, but not defining the outer limit).

#### 1.  Standard of Review.

¶ 10 If possible, this court has a duty to construe a statute so that it will be constitutional. *State v. McDonald*, 191 Ariz. 118, 120, ¶ 11, 952 P.2d 1188, 1190 (App.1998). Our supreme court has held:

> It is a cardinal rule of statutory construction that every intendment is in favor of the constitutionality of legislation, and unless its invalidity is established beyond a reasonable doubt it will be declared constitutional.

*Roberts v. Spray*, 71 Ariz. 60, 69, 223 P.2d 808, 813–14 (1950)(internal citation omitted).

¶ 11 When a constitutional construction of a statute is available, we are to prefer that construction:

> It is well settled that this Court will not pass on the constitutionality of an Act of

---

1.  Susan H. Baumann, M.D. worked with Blake starting in April 1999. She states in a letter dated April 10, 2000 that Blake "believed 'the devil' was controlling her and her children ... [and] that they were 'dead lost souls.' " The letter also states that Blake described to Baumann that when Blake was on fire she felt "relief from the warmth" and that Blake believed that her children would also feel relief from emotional pain.

Congress if a construction of the statute is fairly possible by which the question may be avoided.

*United States v. Clark*, 445 U.S. 23, 27, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980).

¶ 12 The instruction from *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988), is applicable here:

> [W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.

¶ 13 A selected history of the prior versions of A.R.S. § 13–3994, and the pertinent case law, is essential to properly considering the issues raised here.

## 2. History of A.R.S. § 13–3994.

¶ 14 In 1984, A.R.S. § 13–3994(D) provided that persons found insane at the time they committed a crime resulting in physical injury to another, or substantial risk of physical injury to another, were "not eligible for conditional release ... until at least two hundred thirty days ha[d] elapse[d] from the date of the initial commitment." 1984 Ariz. Sess. Laws, ch. 287, § 3. The Arizona Supreme Court, in *State ex rel. Collins v. Superior Court (Mittenthal)*, held that this provision was unconstitutional. 150 Ariz. 295, 723 P.2d 644 (1986). The court found the mandatory 230 day provision violated due process because the statute provided no possibility of a release hearing, before the 230 days passed, to determine if the person was still insane. 150 Ariz. at 299, 723 P.2d at 648. The court reasoned that treatment and confinement are not required when a person no longer suffers from a mental disease. *Id.* Under those circumstances, the government's reason for confining the person—treatment—was no longer a legitimate governmental interest. *Id.* "Punishment ... is not a legitimate interest with regard to persons acquitted by reason of insanity. The person has not been convicted of a crime and cannot be punished." *Id.* Thus, the constitu-

tional impairment was a mandatory 230–day commitment without the prospect of release.

¶ 15 After *Mittenthal*, the Arizona legislature amended § 13–3994 to address the constitutional issue. 1987 Ariz. Sess. Laws, ch. 144, § 1 ("1987 version"). The legislature shortened the length of time a defendant had to wait for a hearing to 120 days. *Id.* The 1987 version also provided that "the person committed may not seek a new release hearing less than six months after any prior release hearing *unless on a petition filed by the ... treatment agency ... the court orders a hearing." Id.* (emphasis added).

¶ 16 In 1992, this court found the 1987 version of the statute to be constitutional. *State v. Helffrich*, 174 Ariz. 1, 846 P.2d 151 (App.1992). *Helffrich* construed the statute to allow the treatment agency to seek a release at *any* time, even though *defendants* had to wait 120 days to request a release hearing for themselves. This interpretation was of critical importance: the statute met the requirements of due process because it reduced the time for a hearing from 230 days to 120 days *and* because it was construed to allow an opportunity for release prior to 120 days. The court stated:

> This statute meets the requirements of due process because it reduces the maximum amount of time an acquittee must wait for a conditional release hearing to 120 days *and also allows for an expedited hearing based upon a petition filed by the evaluating or treating agency stating that the acquittee is no longer suffering from a mental disorder. This law is flexible and responsive to an acquittee's improved mental condition, thereby overcoming the criticism of the earlier statute by the court in [Mittenthal].*

*Helffrich*, 174 Ariz. at 6, 846 P.2d at 156 (emphasis added). The complete language of the applicable 1987 version provided:

> A person committed or the physician or psychologist treating the person committed *may not seek a new release hearing* less than six months *after any prior release hearing—unless,* on a petition filed by the secure mental health evaluation or treatment agency alleging the person is no longer suffering from a mental disorder or

is no longer a danger to himself or others, the court orders a hearing.

1987 Ariz. Sess. Laws, ch. 144, § 1 (emphasis indicating legislative change). Thus, it is important to note that *Helffrich* rejected the interpretation that the right of a treatment agency to request an "expedited hearing" was limited to requests after a prior release hearing. The treatment agency was determined to have the right to request a hearing at any time, even though the statutory language referred to a "new release hearing . . . after any prior release hearing." 1987 Ariz. Sess. Laws, ch. 144, § 1.

¶ 17 Since *Helffrich,* and the 1987 statutory version, the statute has been modified five times.[2] The 1996 version of the statute (and subsequent versions) expressly referred to the right of the treatment agency (or medical director) that *Helffrich* identified as applying "at any time." 1996 Ariz. Sess. Laws, ch. 142, § 1. We now turn to the version of A.R.S. § 13–3994(A), (F), and (G), at issue here.

## 3. The Current Version of A.R.S. § 13–3994(A), (F) & (G).

¶ 18 With key provisions emphasized, A.R.S. § 13–3994(A), (F), and (G) presently provide as follows:

A. A person who is found guilty except insane pursuant to § 13–502 shall be committed to a secure state mental health facility under the department of health services for a period of treatment.

. . . .

F. *A person who is placed under the jurisdiction of the psychiatric security review board pursuant to subsection D of this section is not entitled to a hearing before the board earlier than one hundred twenty days after the person's initial commitment.* A request for a subsequent re-

lease hearing may be made pursuant to subsection G of this section.

. . . .

G. *A person who is placed under the jurisdiction of the psychiatric security review board pursuant to subsection D of this section may not seek a new release hearing earlier than twenty months after a prior release hearing, except that the medical director of the state mental health facility may request a new release hearing for a person under the jurisdiction of the psychiatric security review board at any time.* The person shall not be held in confinement for more than two years without a hearing before the board to determine if the person should be released or conditionally released.

A.R.S. § 13–3994(A), (F), (G)(emphasis added).[3] Blake claims that A.R.S. § 13–3994 violates her due process rights because it does not allow her or anyone else to seek a release hearing on her behalf prior to the expiration of the initial 120–day confinement period. The state argues otherwise.

## A. The State's Interpretation of A.R.S. § 13–3994.

¶ 19 The state contends that the plain language of § 13–3994 does not reflect an intent to prohibit the *medical director* from requesting a release hearing within the first 120 days of commitment. It maintains that subsection F, which contains the prohibitive language, refers to the "person who is placed under the jurisdiction" of the PSRB. Subsection F, in fact, makes no reference to the medical director. Subsection F, the state argues, prescribes what the *defendant* can and cannot do, not what the *medical director* can and cannot do.

¶ 20 The state argues that although the legislature chose to prohibit the *defendant* from requesting a release hearing within the

---

**2.** *See* A.R.S. § 13–3994, Historical and Statutory Notes:
> 1993 Ariz. Sess. Laws, ch. 256, § 12;
> 1996 Ariz. Sess. Laws, ch. 142, § 1; ch. 173, § 2;
> 1997 Ariz. Sess. Laws, ch. 149;
> 1999 Ariz. Sess. Laws, ch. 110;
> 2001 Ariz. Sess. Laws, ch. 244 (effective July 1, 2002).

**3.** The subsections of § 13–3994 at issue in this decision were changed by amendment in 1999. *See* 1999 Ariz. Sess. Laws, ch. 110. Section 13–3994 was amended again in 2001. However, these changes are not effective until July 1, 2002. More importantly, the 2001 amendment does not affect the subsections at issue. *See* 2001 Ariz. Sess. Laws, ch. 244, §§ 1–2.

first 120 days, it did not intend to limit the *medical director's* ability to request a hearing. The state reasons that if the legislature had intended to prohibit the medical director from requesting a release hearing within the first 120 days it would have so stated.

## B. Defendant's Interpretation of § 13–3994.

¶ 21 Blake asserts that subsection F provides that there may be no hearing at anyone's request until 120 days have passed. She does not find, as the state argues, that the medical director may request, or the PSRB hold, a hearing within that time period. She argues that subsection G specifically refers to the medical director's authority to request a hearing. The medical director, Blake asserts, only has authority to request a *new* hearing, one following the 120–day time period after a *prior* release hearing.

¶ 22 Blake attacks the state's assertion that the statute does not expressly prohibit the medical director from requesting a hearing. She argues that to follow such reasoning would mean that anything not expressly prohibited by the statute is authorized.

## C. A.R.S. § 13–3994 can be Constitutionally Construed.

¶ 23 We determine that the language of A.R.S. § 13–3994 does not reflect an intent to prohibit the medical director from requesting a release hearing within 120 days of a defendant's commitment. We agree with the state in finding that subsection F refers to the rights that *defendant* is entitled to exercise. We also determine that *Helffrich* has previously construed a comparable statute (the 1987 version) and found it to allow for a hearing upon the treatment agency's request within the 120–day period. As described below, we find A.R.S. § 13–3994 to be constitutional.

### (i). The Current Statute Incorporates *Helffrich*.

¶ 24 The amendments the legislature made to § 13–3994 in 1999, which establish the current statute at issue, did not meaningfully change the procedure for the medical director to request a hearing within 120 days.

The current version of § 13–3994, in this regard, is substantially the same as the statute that the court in *Helffrich* found constitutional.

¶ 25 *Helffrich* considered the 1987 version of the statute. As noted earlier, the 1987 version of the statute granted the right to the treatment agency (the equivalent of the reference to medical director in the current version) to request a hearing in the context of a statute referencing a *"new* release hearing less than six months after *any prior release hearing."* 1987 Ariz. Sess. Laws, ch. 144, § 1 (emphasis added). *Helffrich* did not limit the right to request a hearing to any time *after* a prior release hearing; rather, *Helffrich* held that the provision allowed the treatment agency to request a hearing *at any time.* 174 Ariz. at 6, 846 P.2d at 156. This was one of the key reasons that *Helffrich* found the 1987 version of the statute to be constitutional. *Id.*

¶ 26 Our case law provides that when the legislature retains statutory language that has been previously construed by the courts, the legislature is deemed to incorporate those holdings:

> It is presumed the legislature is aware of existing case law when it passes a statute, and that it is aware of court decisions interpreting the language of the statute; and when it retains the language upon which those decisions are based, it approves the interpretations.

*State v. Pennington,* 149 Ariz. 167, 168, 717 P.2d 471, 472 (App.1985)(internal citation omitted); *State v. Superior Court,* 104 Ariz. 440, 442, 454 P.2d 982, 984 (1969); *State v. Jones,* 94 Ariz. 334, 336, 385 P.2d 213, 215 (1963). Here, the current version of the statute retains the same reference to a "new release hearing" in the same context of "any prior release hearing" that *Helffrich* construed to allow the treatment agency to request a hearing at any time. We believe *Helffrich* was well-reasoned and see no reason to depart from its holding. We consider the legislature to have adopted the construction *Helffrich* gave to the present version of § 13–3994.

¶ 27 Given *Helffrich* and our duty to construe a statute so as to render it constitutional if reasonably possible, *McDonald,* 191 Ariz. at 120, ¶ 12, 952 P.2d at 1190, and to avoid an "otherwise acceptable construction of a statute [that may] raise serious constitutional problems," *DeBartolo,* 485 U.S. at 575, 108 S.Ct. 1392, we reject petitioner's argument that a "new release hearing" means one after an initial release hearing. We reject as well petitioner's argument that the ability of the medical director to request a hearing at any time opens the door to other unnamed persons to so request.

¶ 28 As we next discuss, the legislative history to the current version of A.R.S. § 13–3994(A), (F) and (G) similarly supports our determination that the legislature intended that the medical director be able to request a release hearing at any time.

### (ii). The Legislative History of A.R.S. § 13–3994 Supports a Constitutional Interpretation.

¶ 29 Although the statute's language "is the best and most reliable index of the statute's meaning, . . . uncertainty about the meaning or interpretation of the statute's terms requires the appellate court to apply methods of statutory interpretation that go beyond the statute's literal language. . . . These methods include consideration of the statute's context, language, subject matter, historical background, effects and consequences, and spirit and purpose." *Estancia Dev. Assoc., L.L.C. v. City of Scottsdale,* 196 Ariz. 87, 90, 993 P.2d 1051, 1054 (App.1999) (internal citations omitted).

¶ 30 The legislative history of A.R.S. § 13–3994 indicates that changes made to A.R.S. § 13–3994 in 1999 were meant to lessen the burden on victims, not to modify the medical

director's ability to request a hearing at any time. The amendments extended the length of time defendants must wait before requesting a "new release hearing after a prior release hearing before the PSRB, and required the court to state the specific dates of the PSRB's jurisdiction over certain GEI individuals." H.B.2022, Ariz. St. S. Fact Sheet, 1st Sess., Mar. 12, 1999, at 1. Extending the length of time a defendant must wait before requesting a new release hearing from six months to twenty months was done to lessen the burden on the PSRB and the victims who chose to attend the hearings. *Id.* at 2. As an example, the legislature was advised of one family of victims that was faced with appearing at a release hearing every six months, for twenty-five years. Senate Judiciary Comm. Minutes for Mar. 16, 1999, 44th Leg., 1st Sess. (Ariz.).[4] The new amendments lengthen the period between hearings to twenty months. Thus, under the new amendment these particular victims would only need appear up to *fifteen* times over the course of the twenty-five year commitment as opposed to *fifty* times.

¶ 31 The legislative history supports the medical director's ability to request a hearing at any time. During the Senate Judiciary Committee's discussion of the amendments, George Weisz, executive assistant to Governor Hull, noted that a GEI inmate receives an initial hearing immediately after being put in the PSRB's jurisdiction. Senate Judiciary Comm. Minutes for Mar. 16, 1999, 44th Leg., 1st Sess (Ariz.). Also, Representative Verkamp noted the proposed bill's provision that allows the medical director to request a hearing *at any time.* House Judiciary Comm. Minutes for Jan. 27, 1999, 44th Leg., 1st Sess. (Ariz.).[5]

4. The Senate Judiciary Committee Minutes for H.B.2022 referenced a real-life example of the hardships victims and the families affected by GEI defendants suffer in having hearings every six months. Senate Judiciary Comm. Minutes for Mar. 16, 1999, 44th Leg., 1st Sess. (Ariz.). One victim told how the GEI defendant had murdered the family's father and threatened the lives of other family members. *Id.* The GEI defendant apparently requested a hearing every six months. Family members felt they had to attend the hearings to express their fears about the GEI defendant and to insure that the GEI

defendant was not released. *Id.* The victim testified that the family was required to recount the pain of the murder every six months in revisiting the issue at the release hearing. *Id.* Thus, the legislature had notice of victims' practical, as well as emotional hardships, due to release hearings held every six months.

5. Blake argues that other portions of the minutes reflect that the medical director has no authority to seek a hearing prior to 120 days. She relies on comments to the committee by Mr. Peterson. The minutes state:

¶ 32 Thus, the legislative history does not support any legislative intent to modify the ability of the medical director to request a hearing at any time. Clearly, legislators were primarily concerned with the hardship for victims and their families that the six-month provision created. The legislative history supports the constitutional view of the statute set forth above.

### (iii). Summary as to Constitutionality.

¶ 33 Based on the foregoing, we determine that A.R.S. § 13–3994(A), (F), and (G) do not contain a mandatory 120–day time period before the medical director may request a release hearing. Except for the change from six months to twenty months, we find the current statutory language comparable to the statutory language that this court found constitutional in *Helffrich*. Moreover, the legislative history of the statute expressly supports our view that the legislature did not intend to preclude the medical director from requesting a release hearing at any time. Hence, we find A.R.S. § 13–3994(A), (F), and (G) to be constitutional.

### 4. The Medical Director's Ability to Request a Hearing is Enforceable.

¶ 34 We now address Blake's contention that she has not been given a release hearing within 120 days of her commitment. As explained above, although defendant is not entitled to a release hearing within 120 days as a matter of right, the medical director has discretion to request a release hearing within 120 days.

¶ 35 While the medical director *may* request a release hearing within 120 days of a defendant's commitment, the medical director is not obligated to do so; nor is the PSRB obligated to hold a hearing, if so requested. For instance, there may be no sufficient basis to support requesting or providing a hearing within 120 days. However, that the statute allows the medical director to request a hearing within 120 days means that the director has to exercise discretion, which means that the director has the duty to not abuse his or her discretion. The medical director is obligated to have procedures in place to evaluate those committed to the PSRB in order to *determine* whether a release hearing within 120 days of commitment should be requested. The PSRB is likewise obligated to have procedures in place to conduct a hearing within 120 days if requested by the medical director and found to be appropriate.

¶ 36 If either the medical director or the PSRB fails to implement appropriate procedures, or otherwise abuses the discretion they each possess, a party may seek special action relief to (1) compel the medical director to *determine* whether a release hearing should be requested on a GEI defendant's behalf, and (2) compel the PSRB to *determine* whether to grant a release hearing if the medical director so requests.[6] The right to such a determination makes § 13–3994(A), (F), and (G) constitutional.[7]

---

Mr. Peterson said H.B.2022 changes the ability of the medical director of the state mental health facility to request a release hearing on behalf of a GEI patient from any time after six months following a prior release hearing to any time after an initial hearing.

Senate Judiciary Comm. Minutes for Mar. 16, 1999, 44th Leg., 1st Sess (Ariz.). We are unpersuaded that this statement from Mr. Peterson was intended to address the medical director's ability to request a hearing within the initial 120–day commitment period. Mr. Peterson was a Senate intern. He was apparently unfamiliar with *Helffrich*, which made clear that the medical director could request a hearing at any time. Mr. Weisz and Rep. Verkamp interpreted the amendments consistent with *Helffrich*.

6. If a public official does not undertake steps to fulfill his or her duty, "[a] writ of mandamus will

issue to compel a public official to perform a duty which he has no discretion but to perform." *Krucker v. Goddard*, 99 Ariz. 227, 232, 408 P.2d 20, 23 (1965). Writs of mandamus have now been replaced with special actions. *Home Builders Ass'n v. City of Apache Junction*, 198 Ariz. 493, 503, ¶ 32, 11 P.3d 1032, 1042 (App.2000). Those rules provide for the court to determine whether a "defendant has failed to exercise discretion which he has a duty to exercise ... or [w]hether a determination was arbitrary or capricious." Ariz. R.P. Spec. Act. 3(a), (c).

7. As noted earlier, we do not reach the issue of whether a mandatory 120–day confinement period under this statute is constitutionally enforceable without this right.

### *Conclusion*

¶ 37 We find that A.R.S. § 13–3994(A), (F), and (G) are constitutional. Accordingly, we deny the requested relief.

CONCURRING: E.G. NOYES, Jr., Presiding Judge and PHILIP HALL, Judge.