306 P.3d 93

**RSP ARCHITECTS, LTD., a Minnesota corporation, Plaintiff/Appellant,**

v.

**FIVE STAR DEVELOPMENT RESORT COMMUNITIES, LLC, an Arizona Limited liability company; Five Star Development Properties, LLC, an Arizona limited liability company; Five Star Development Group, Inc., an Arizona corporation; Five Star Development Communities, LLC, an Arizona limited liability company, Defendants/Appellees.**

No. 1 CA–CV 12–0545.

Court of Appeals of Arizona, Division 1.

July 16, 2013.

---

Gammage & Burnham, P.L.C. by James A. Craft, Carolyn V. Williams, Christopher L. Hering, Phoenix, Attorneys for Plaintiff/Appellant.

Dickinson Wright/Mariscal Weeks PLLC by Scott A. Holcomb, Denise H. Troy, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

JOHNSEN, Judge.

¶ 1 RSP Architects, Ltd. appeals the superior court's summary judgment in favor of Five Star Development Resort Communities, LLC, on RSP's claim for violation of the Arizona Prompt Payment Act. We hold the Prompt Payment Act does not apply to a contract for architectural services and so affirm the superior court's order.

## FACTS AND PROCEDURAL HISTORY

¶ 2 RSP and Five Star executed a contract in which RSP agreed to provide a variety of architectural services relating to a development known as "The Palmeraie." The contract charged RSP with "construction administration," "overall coordination" of the project and the creation of "conceptual design, schematic design, design documents, [and] construction documents." As later amended, the total fee due under the contract was $3,072,074.

¶ 3 After events not relevant to our analysis, RSP ceased work on the project and sued, alleging, among other claims, a violation of Arizona's Prompt Payment Act, Arizona Revised Statutes ("A.R.S.") sections 32–1129 *et seq.* (West 2013).[1] On cross-motions for partial summary judgment, the superior court held the Prompt Payment Act does not apply to a contract between an owner and an architect and entered summary judgment in Five Star's favor on that claim.[2]

¶ 4 We have jurisdiction of RSP's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12–120.21(A)(1) (West 2013) and –2101(A)(1) (West 2013).

## DISCUSSION

¶ 5 On contracts to which the Prompt Payment Act applies, a contractor's bill for a progress payment is "deemed certified and

---

1. Absent material revision after the relevant date, we cite a statute's current version.

2. After additional rulings and a five-day trial, the court found that RSP overcharged Five Star for work performed under the contract and granted judgment for Five Star in the amount of $86,697. We address other issues on appeal from that judgment in a separate memorandum decision. *See* ARCAP 28(g).

approved" unless the owner objects in writing within 14 days. A.R.S. § 32–1129.01(D). With certain exceptions, the owner must make a progress payment within seven days after the bill is certified and approved. A.R.S. § 32–1129.01(A). RSP's complaint alleged that because Five Star did not timely disapprove the invoices RSP sent between December 2008 and May 2009, Five Star violated the Prompt Payment Act by failing to pay those invoices.

¶ 6 The Prompt Payment Act explicitly applies only to "contractors" and defines a "contractor" as "any person, firm, partnership, corporation, association or other organization, or a combination of any of them, that has a direct contract with an owner to perform work under a construction contract." A.R.S. § 32–1129(A)(2). The question, therefore, is whether the contract here is a "construction contract" within the meaning of the statute. The act defines "construction contract" as

> a written or oral agreement relating to the construction, alteration, repair, maintenance, moving or demolition of any building, structure or improvement or relating to the excavation of or other development or improvement to land.

A.R.S. § 32–1129(A)(1).[3]

¶ 7 RSP argues its contract falls within the Prompt Payment Act because it "relat[es] to" the development or improvement of land, within the definition of "construction contract" in A.R.S. § 32–1129(A)(1). RSP contends that because the phrase "relating to" is a "generous choice of wording" that means "stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with," we should construe the words of the statute literally, to include any and all contracts that relate to the development of land.

¶ 8 Common sense, however, tells us there must be some bounds to the breadth of the statute. Read literally, the act otherwise would apply to absolutely any agreement touching on construction: The retainer agreement between the contractor and its zoning lawyer, the agreement the contractor signs with a security company to monitor the construction site, even an oral arrangement between the contractor and a food vendor who promises to bring his lunch truck by the site each day.

¶ 9 "Although the statute's language is the best and most reliable index of the statute's meaning," when we cannot be certain about the scope of a statute, we must "apply methods of statutory interpretation that go beyond the statute's literal language" to determine the legislature's intent. *Blake v. Schwartz*, 202 Ariz. 120, 126, ¶ 29, 42 P.3d 6, 12 (App.2002) (quotation omitted). "To arrive at the intention of the legislature, the court looks to the words, context, subject matter, effects and consequences, reason and spirit of the law." *City of Phoenix v. Superior Court*, 144 Ariz. 172, 175, 696 P.2d 724, 727 (App.1985). Specifically, "[s]tatutory construction requires that provisions of a statute be read and construed in the context of related provisions and in light of its place in the statutory scheme." *Id.* at 176, 696 P.2d at 728.

¶ 10 We begin by noting that the Prompt Payment Act appears in Chapter 10 of Title 32, and that Chapter 10 generally governs contractors and construction contracts (in the ordinary sense, meaning contracts for the construction of buildings or other improvements), while Chapter 1 of Title 32 regulates architects and other professionals. More specifically, the Prompt Payment Act is found in Article 2 of Chapter 10, titled "Licensing," which deals with the licensing of contractors, not the licensing of architects. Indeed, A.R.S. § 32–1121(A)(7) (West 2013), which lies within Article 2, provides that Chapter 10 "shall not be construed to apply to" an architect regulated by Chapter 1 even when the architect hires a "contractor for preconstruction activities."

¶ 11 A provision in Article 3 ("Regulation") of Chapter 10 expressly addresses architects, but does so in a manner that demonstrates that the legislature likely did not intend to include architects within the Prompt Payment Act. With some exceptions, A.R.S.

---

**3.** We review questions of statutory interpretation *de novo*. *In re Commitment of Jaramillo*, 229 Ariz. 581, 583, ¶ 7, 278 P.3d 1284, 1286 (App. 2012).

§ 32–1159 invalidates a contract by which a contractor or architect must indemnify the other party for damage resulting from the other's sole negligence. Significantly for our purposes, in specifying the contracts to which the indemnification bar applies, § 32–1159(D) draws a clear distinction between "construction contracts" and "architect-engineer professional service contracts." Using language almost identical to the definition of "construction contract" in § 32–1129(A)(1) of the Prompt Payment Act, § 32–1159 defines "construction contract" as

> a written or oral agreement relating to the construction, alteration, repair, maintenance, moving, demolition or excavation or other development or improvement to land.

A.R.S. § 32–1159(D)(2). By contrast, the same statute defines "architect-engineer professional service contract" as

> a written or oral agreement relating to the design, design-build, construction administration, study, evaluation or other professional services furnished in connection with any actual or proposed construction, alteration, repair, maintenance, moving, demolition or excavation of any structure, street or roadway, appurtenance or other development or improvement to land.

A.R.S. § 32–1159(D)(1).

¶ 12 Section 32–1159, the anti-indemnity provision, was enacted in 1993, seven years before the Prompt Payment Act in 2000. The legislature at that time plainly intended to bring design professionals within the protection of the anti-indemnity act. It chose to do so not by relying on a single broad definition of "construction contract" that might encompass architects, but by crafting a specific definition of "architect-engineer professional service contract" to which the anti-indemnity act would apply. Significantly for our analysis, the definition of "construction contract" that the legislature presumably concluded in 1993 did not include design professionals is virtually identical to the definition of "construction contract" enacted in the Prompt Payment Act seven years later.

¶ 13 We must construe a statute to fulfill legislative intent by considering it as a whole and giving harmonious effect to all of its sections. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 183, ¶ 33, 181 P.3d 219, 230 (App.2008) (phrase "structural alteration" used in one section of statute means something different than "structural change" as used in another section). Moreover, "[s]tatutes relating to the same subject matter should be read *in pari materia* to determine legislative intent and to maintain harmony." *Washburn v. Pima County*, 206 Ariz. 571, 575, ¶ 10, 81 P.3d 1030, 1034 (App.2003) (quotation omitted).

¶ 14 Adopting RSP's contention that the definition of "construction contract" in the Prompt Payment Act includes a contract for architectural services would call into question the purpose of A.R.S. § 32–1159(D), because even without that language, every architectural contract would qualify as a "construction contract" subject to that statute's bar on indemnity. To give meaning and purpose to the definition of "architect-engineer professional service contract" in that statute, we must conclude that the definition of a "construction contract" in § 32–1129(A)(1) (any contract "relating to" construction), as broad as it is, does not include a contract with a design professional such as an architect.

¶ 15 We generally presume the legislature is aware of existing statutes when it enacts a new one. *Washburn*, 206 Ariz. at 576, ¶ 11, 81 P.3d at 1035. Accordingly, we presume the legislature was aware when it enacted the Prompt Payment Act that § 32–1159 distinguishes design-professional contracts from contracts "relating to" construction. It follows that we must assume that when the legislature used the same language to define "construction contracts" in the Prompt Payment Act, it knew and intended that the latter statute would not include design professionals.

¶ 16 Further, the Prompt Payment Act elsewhere implies that a "contractor" within the meaning of the act must be licensed by the Registrar of Contractors. As we have noted, the act falls within the article titled "Licensing," and § 32–1129.02(B) provides that a "contractor" that does not pay a subcontractor or material supplier for work performed pursuant to a contract is subject to

disciplinary action by the Registrar of Contractors, including suspension or revocation of a contractor's license. An architect, of course, need not obtain a contractor's license unless he or she is acting as a contractor in the usual sense of the word. *See* A.R.S. § 32–1121(A)(7).

¶ 17 RSP, however, points to the drafting history of what became the Prompt Payment Act in arguing that the statute's broad definition of "construction contract" was meant to include architects and other design professionals within the protection of the act.

¶ 18 RSP cites the minutes of a Joint Legislative Study Committee on Prompt Payment in the Construction Industry, which in 1998 was considering draft legislation requiring owners to timely respond to contractors' invoices. RSP argues that language very similar to the current definition of "construction contract" was added to the draft legislation after two lobbyists urged the committee to include design professionals within the protection of the act. It points out that according to the minutes of a meeting of the joint committee, Representative Weiers "moved approval" of the draft legislation "with inclusion of architects and engineers."

¶ 19 The legislative history, however, is not compelling. The draft legislation that emerged from the joint committee failed in 1999; it was reintroduced the following year without any specific mention of architects or engineers but with the same definition of "construction contract." RSP does not argue

that the draft legislation ever explicitly included architects or other professionals; the omission of such a reference to those professionals may be telling, given that the issue was raised squarely before the joint committee.[4]

¶ 20 RSP finally asserts that its contract with Five Star falls within the definition of "construction contract" in the Prompt Payment Act because it required RSP to do more than simply create design drawings for The Palmeraie. RSP contends that under the contract, RSP was "tasked with shepherding The Palmeraie's construction" and was "Five Star's representative and construction administrator," "not just … an architect." But it is not clear that the form architectural contract that RSP entered into with Five Star required RSP to do anything more than is regularly required of an architect in a project such as The Palmeraie.

¶ 21 The contract at issue is a modified AIA (American Institute of Architects) Document B151 (1997), "Abbreviated Standard Form of Agreement Between Owner and Architect." It provides that RSP "will provide conceptual design, schematic design, design documents, construction documents and construction administration services." But the contract's requirement that RSP perform "construction administration services," by itself, does not extend RSP's duties beyond those normally assumed by architects. We know this because the indemnity-bar statute discussed above, A.R.S. § 32–1159(D), de-

---

4. Among other states' prompt-payment statutes that predate Arizona's are some that expressly include architects and other design professionals. *See* Del.Code Ann. tit. 6, § 3501(2) (West 2013) ("'Contractor' includes, but is not limited to, an architect, engineer, … who enters into any contract with another person to furnish labor and/or materials in connection with the erection, construction, completion, alteration or repair of any building…."); Me.Rev.Stat. tit. 10, § 1111(8) (West 2013) (defining "work" of a "construction contract" to include "any design or other professional or skilled services rendered by architects, engineers, land surveyors, landscape architects and construction engineers"); Mo.Rev.Stat. § 431.180(4) (West 2013) ("design or construction work shall include … the furnishing of surveying, engineering or landscape design, planning or management services, labor or materials, in connection with such work"); N.C. Gen.Stat. § 22C–1 (West 2013) (a "contractor" is one who

"improve[s]" real property; "improve" includes "any design or other professional or skilled services furnished by architects"); S.C.Code Ann. § 29–6–10 (West 2013) (a "contractor" is one who "improve[s]" real property; "improve" includes "any design or other professional or skilled services furnished by architects"); Vt. Stat. Ann. tit. 9, § 4001(2) (West 2013) (work on real property includes "any design or other professional or skilled services rendered by architects, engineers, land surveyors, landscape architects, and construction managers"). The Fact Sheet for the Senate Bill of what became the Arizona Prompt Payment Act stated that 16 other states had "some form of prompt pay construction laws." Senate Fact Sheet for S.B. 1549, 44th Leg., 2nd Reg. Sess. (Feb. 8, 2000). This suggests that our legislature may have made a considered decision not to follow the lead of other states that expressly had extended prompt-pay protection to design professionals.

fines an "architect-engineer professional service contract" to include "construction administration."

¶ 22 Nor does the form contract's section labeled "Construction Phase–Administration of the Construction Contract" in fact impose on RSP any general responsibility for the actual construction of the project. The contract explicitly provides that RSP was not required to control the quality of the construction: "The Architect shall neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, ... since these are solely the Contractor's rights and responsibilities under the Contract Documents." Although RSP argues the Prompt Payment Act applies to architects who are hired to perform "construction management" duties, nothing in the form AIA contract at issue here imposed those duties on RSP. *See McMaster Constr., Inc. v. Bd. of Regents of Okla. Colls.*, 934 P.2d 335, 340 (Okla.1997) ("construction management services" do not constitute practice of architecture.)

## CONCLUSION

¶ 23 For the foregoing reasons we affirm the superior court's ruling that Arizona's Prompt Payment Act does not apply to the architectural-services contract between RSP and Five Star.

CONCURRING: SAMUEL A. THUMMA, Presiding Judge, and MICHAEL J. BROWN, Judge.