NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

———————————————

TRAP-ZAP ENVIRONMENTAL SYSTEMS INC.,
*Plaintiff/Appellee-Cross Appellant,*

*v.*

FACILITYSOURCE NORTHEAST SERVICES LLC,
*Defendant/Appellant-Cross Appellee.*

No. 1 CA-CV 18-0278
FILED 8-13-2019

———————————————

Appeal from the Superior Court in Maricopa County
No.   CV 2016-05220
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

———————————————

COUNSEL

Jennings, Haug & Cunningham LLP, Phoenix
By Brian D. Myers, Joseph A. Brophy
*Defendant/Appellant-Cross Appellee*

Engelman Berger PC, Phoenix
By Bradley D. Pack
*Plaintiff/Appellee-Cross Appellant*

_____

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

_____

**C A M P B E L L**, Judge:

¶1      FacilitySource Northeast Services, LLC ("FSNE") appeals from the superior court's denial of summary judgment in favor of Trap-Zap Environmental Services, Inc. ("Trap-Zap") for breach of contract. Trap-Zap cross-appealed the dismissal of its claim under the Arizona Prompt Payment Act (the "Act"). For the following reasons, we affirm.

**BACKGROUND**

¶2      Trap-Zap is a New Jersey corporation that maintains, cleans, and repairs commercial grease traps. FSNE is an Arizona limited liability company with its principal place of business in Maricopa County. Trap-Zap and FSNE entered into a subcontractor agreement (the "Contract"). Trap-Zap agreed to perform grease trap maintenance and wastewater treatment services for FSNE's customer that operated a large chain of grocery stores. The Contract contains a choice-of-law provision indicating that Arizona law applies to any dispute between the parties. Trap-Zap performed work for FSNE in six different states pursuant to the terms of the Contract. FSNE collected payments on 176 invoices (the "Subject Invoices") from its customer but refused to pay Trap-Zap for the completed work.

¶3      Trap-Zap sued FSNE in Arizona for breach of contract, violation of the Act, negligent misrepresentation, and promissory estoppel to recover $220,255.20 in fees for all work completed pursuant to the Contract. Trap-Zap claimed FSNE violated the Act under Arizona Revised Statutes ("A.R.S.") section 32-1129. The court granted FSNE's motion to dismiss the Prompt Payment claim, ruling the Act did not apply to work performed outside of Arizona. Trap-Zap moved for partial summary judgment on its breach of contract claim. Trap-Zap alleged FSNE failed to pay the Subject Invoices, totaling $161,744.38. In response, FSNE claimed Trap-Zap breached the Contract by not obtaining the necessary licenses for work performed in Delaware, New Jersey, and New York. FSNE argued for the first time that because Trap-Zap lacked the requisite licenses, the contract was illegal and thereby unenforceable.

¶4            The court ordered that FSNE raise its illegality claim in a separate summary judgment motion. FSNE did so, raising the same arguments regarding illegality and unenforceability. The court denied FSNE's motion for summary judgment, finding FSNE's illegality defense was not valid.

¶5            The court granted summary judgment in favor of Trap-Zap ruling (1) that Arizona law applied, (2) under Arizona law, Trap-Zap's alleged lack of licensing did not prevent enforcement of the parties' contract, and (3) FSNE waived illegality as an affirmative defense by failing to properly raise it in the answer and subsequent disclosures. FSNE timely appealed the court's grant of summary judgment in favor of Trap-Zap. Trap-Zap timely filed a cross-appeal, challenging the court's dismissal of its Prompt Payment claim.

## DISCUSSION

### I.      FSNE's Claims on Appeal

¶6            FSNE's appeal arises from the superior court's rejection of FSNE's illegality defense and the court's simultaneous grant of summary judgment for breach of contract in favor of Trap-Zap. FSNE claims that, because Trap-Zap was not licensed to collect waste in New York, New Jersey, and Delaware, the Contract is illegal and therefore FSNE is not obligated to pay Trap-Zap money owed for the outstanding invoices. The court found that "even if TrapZap needed licenses it did not have, such conduct would not bar TrapZap's claim in this case." We agree. Additionally, based on the limited record before us and the waste collection statues of Delaware, New Jersey, and the counties of New York where Trap-Zap performed work, there is no evidence in the record that Trap-Zap engaged in conduct that required licensing—rendering FSNE's motion on the illegality of the contract factually unsupported.

#### A.      Dismissal of FSNE's Counterclaim

¶7            FSNE also challenges the court's dismissal of its counterclaim alleging breach of contract, breach of the covenant of good faith and fair dealing, theft/conversion, and unjust enrichment. As the court noted, because FSNE "offer[ed] no argument in support of the counterclaim" and did not put forth evidence it suffered damages or that the alleged breach was material, the counterclaim fails. Because FSNE failed to make an argument below regarding its counterclaim, these arguments are waived on appeal. *See Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011) (explaining that "legal theories

3

must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits" and the failure to do so waives the argument on appeal).

**B.      Summary Judgment in Favor of Trap-Zap**

**¶8**      Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). When reviewing the superior court's grant of summary judgment, we review de novo whether genuine issues of material fact exist and whether the court erred in applying the law. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45 (App. 1996). We view all reasonable inferences in the non-moving party's favor. *Russell Piccoli P.L.C. v. O'Donnell*, 237 Ariz. 43, 46–47, ¶ 10 (App. 2015).

**1.      Arizona law applies to Trap-Zap's breach of contract claim.**

**¶9**      FSNE first argues the trial court erred by determining that Arizona law applies under the choice-of-law provision in the Contract. We disagree. The choice-of-law provision in the Contract applies to the contractual obligations of FSNE and Trap-Zap. Specifically, it states that the laws of Arizona govern the validity, performance, interpretation, and effect of the Contract. FSNE does not argue that the laws of Arizona and the states where the work was performed conflict. Thus, this is not a traditional conflict of laws issue. Nor does FSNE argue that the provision in the Contract selecting Arizona law is invalid or void, so we need not determine whether it is valid or effective. To be sure, in its counterclaim, FSNE acknowledges that "Trap-Zap entered into a valid written contract with FSNE." *See Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 266–67, ¶ 8 (2003) ("If a contract includes a specific choice-of-law provision, we must determine whether that choice is 'valid and effective' under Restatement § 187.").

**¶10**      Instead, FSNE argues that the laws of Delaware, New Jersey, and New York should apply because those states have a greater interest in the outcome of this case and because that is where Trap-Zap performed the work for the Subject Invoices pursuant to the Contract. That could be true were this a case about the manner in which the work was performed — specifically, if FSNE's allegations raised safety concerns for the citizens of those states. It might also be true if a New Jersey, Delaware, or New York client actually received services under the Contract and refused to make payments required by the Contract. Neither is the case at hand. The relevant

4

issue here is whether FSNE, an Arizona Corporation, breached the Contract by failing to pay Trap-Zap for work performed pursuant to the Contract.

¶11            Arizona law gives effect to the plain language of contracts. *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 86, ¶ 12 (App. 2006). "An express choice-of-law provision in a contract ordinarily will be given effect . . . ." *Ciena Capital Funding, LLC v. Krieg's, Inc.*, 242 Ariz. 212, 216, ¶ 11 (App. 2017). "Arizona courts will apply the law of the state chosen by the parties to govern their *contractual* relationship as long as the chosen law has some nexus with the parties or the contract." *Winsor v. Glasswerks PHX, L.L.C.*, 204 Ariz. 303, 307, ¶ 9 (App. 2003); *see Nanini v. Nanini*, 166 Ariz. 287, 290 (App. 1990) ("When the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, that law will generally be applied."). According to the Restatement, "the parties' choice-of-law applies if the parties could have resolved explicitly a particular issue in their contract." *Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 207 (1992) (citing Restatement (Second) of Conflict of Laws § 187(1) (1971)). The parties agreed to a choice-of-law provision and specifically designated that Arizona law would govern. Given that FSNE is an Arizona corporation—and that the chosen forum is Arizona—Arizona has paramount interest in whether one of the parties breached the Contract.

¶12            FSNE attempts to reap a windfall under the Contract by arguing Trap-Zap's allegedly illegal conduct renders the Contract illegal. While FSNE is correct that illegality cannot be resolved by a particular provision in the Contract, illegality is not the issue here—the issue is whether Trap-Zap's alleged lack of licensing excuses FSNE's breach of the Contract. Parties are certainly free to resolve breach of contract issues by a particular provision in a contract. Thus, the parties' choice of Arizona law is valid and enforceable.

### 2.     Trap-Zap can recover for breach of contract under Arizona law.

¶13            Having determined Arizona law applies, we must next determine whether Trap-Zap can recover under the Contract, even if it did not have the required licenses for the work it performed. FSNE relies on *Landi v. Arkules*, 172 Ariz. 126 (App. 1992), to support its argument that contracts are unenforceable and "illegal" in Arizona when one party was not properly licensed during performance under a contract. The superior court rejected this argument because a contract for "cleaning grease traps is

5

not in and of itself an illegal purpose or contrary to public policy." We agree.

¶14 In Arizona, parties may enter into contracts as they desire, provided only that the contract is not for an illegal purpose or against public policy. *Gaertner v. Sommer*, 148 Ariz. 421, 423 (App. 1986). Only "if the acts to be performed under the contract are themselves illegal or contrary to public policy, or if the legislature has clearly demonstrated its intent to prohibit maintenance of a cause of action" should recovery be denied. *Mountain States Bolt, Nut & Screw Co. v. Best-Way Trans.*, 116 Ariz. 123, 124 (App. 1977). A contract that cannot be performed *without* violating applicable law is illegal and void. *Ruelas v. Ruelas*, 7 Ariz. App. 98, 101 (1968). That is not the case here. The Contract is not an illegal contract because collecting waste and cleaning grease traps is not itself illegal nor is it against public policy. FSNE's defense to performance under the Contract is a simple material breach of contact claim—did Trap-Zap's failure to obtain licensing amount to a breach that would bar recovery? We agree with the superior court that Arizona law does not bar Trap-Zap's recovery under FSNE's illegality theory.

¶15 To the extent FSNE relies on *Landi*, that case is inapposite. *Landi* involved protection of the public; not relationships between sophisticated actors. In that matter, the court refused to uphold a contract between a private investigator and his client based on several factors, including "improper solicitation of an attorney, an excessive fee, and the performance of investigative services by persons not licensed." *Landi*, 172 Ariz. at 131. The court explained that the public policy behind regulating public investigators is clear: "for the protection of the public from unscrupulous and unqualified investigators." *Id.* at 135. However, the court explained that "[t]he failure to obtain a license, permit, or certificate does not invalidate every contract as contrary to public policy." *Id.* The court's reasoning applies to the case here.

¶16 This case more closely resembles *Mountain States Bolt, Nut & Screw Co. v. Best-Way Transportation*. 116 Ariz. 123. In *Mountain States*, the parties entered into a transportation contract where Best-Way agreed to transport goods for Mountain States to Arizona. *Id.* at 124. At the time of performance, a portion of Best-Way's carrier's certificate was in dispute, and it was not properly certified to transport goods for a portion of the route. *Id.* As a result, Mountain States refused to pay the amounts owing under the contract. *Id.* Best-Way filed a lawsuit to collect the outstanding balance. *Id.* The issue raised by Mountain States is similar to those raised by FSNE: could Best-Way bring a collection action when it was not properly

certified to perform the work contemplated in the parties' contract? *Id.* The court explained that "[t]he transportation of goods is not in and of itself an illegal purpose or contrary to public policy." *Id.* Because there was "no immoral or reprehensible motive in" the contract, the court found recovery should not be denied. *Id.* (citing *Ruelas*, 7 Ariz. App. at 101). The court further explained that no evidence showed that the legislature had ever declared contracts in violation of the certification requirement "so violative of public policy as to be unenforceable." *Id.* The court's reasoning in *Mountain States* is equally applicable in this circumstance.

¶17        Here, Trap-Zap and FSNE contracted for Trap-Zap's maintenance and repair of grease traps. This is not a contract for immoral, illegal, or reprehensible conduct. The subject of the Contract is not contrary to public policy. Even assuming there was enough evidence in the record to show Trap-Zap violated licensing requirements, nothing supports the contention that the Arizona legislature would find it "so violative of public policy" that it rendered the underlying contract unenforceable. The legislature has not expressly precluded recovery by unlicensed waste carriers. It has done so in other circumstances — as is the case for improperly licensed or unlicensed contractors. *See, e.g.*, A.R.S. § 32-1153. FSNE has failed to identify any compelling policy consideration that would be served by barring Trap-Zap's recovery in this matter, given the absence of evidence that the work Trap-Zap actually performed required it to have a waste transport license. *Cf. Levine v. Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.*, 244 Ariz. 234, 237–38, ¶¶ 9–11 (App. 2018) (barring recovery of attorney fees sought in violation of public policy and the Arizona Rules of Professional Conduct); *Landi*, 172 Ariz. at 131 (barring recovery for the public policy reason of preventing improper solicitations by an attorney); *Jackson v. Robertson*, 90 Ariz. 405, 411 (1962) (finding a contract for the issuance of unregistered corporate stock in accordance with the Arizona Securities Act illegal and unenforceable). The superior court correctly granted summary judgment against FSNE on its illegality defense and in favor of Trap-Zap for breach of contract.

¶18        Because the Contract is not an illegal contract and we find FSNE's illegality defense does not apply in this case, we need not determine whether it was timely raised.

## II.    Trap-Zap's Cross-Appeal

¶19        Dismissal of a claim under Rule 12(b)(6) is appropriate only if the plaintiff would not be entitled to relief under any interpretation of the facts as a matter of law. *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012).

We review the dismissal of a claim under Rule 12(b)(6) de novo. *Id.* Our examination is limited to the pleadings and we will "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

**¶20**        The trial court granted FSNE's motion to dismiss Trap-Zap's Arizona Prompt Payment claim, finding the statute did not apply to work performed outside Arizona. In its cross-appeal, Trap-Zap argues the trial court erred in dismissing its claim under the Act. Trap-Zap also challenges the award of the rate of interest on the judgment at the general statutory rate authorized by A.R.S. § 44-1201. Trap-Zap claims that should it prevail, and this court determine that the Act applies, the higher 18% interest rate prescribed in the Act should apply. *See* A.R.S. § 32-1129.02(H) (2011).[1]

**¶21**        The Act provides in part that performance by a subcontractor under the provisions of a contract entitles the subcontractor to speedy payment. A.R.S. § 32-1129.02(A), (B) (2011). It further provides, "[i]f a subcontractor . . . has performed in accordance with the provisions of a construction contract, the contractor shall pay to its subcontractors . . . the full amount received for such subcontractor's work . . . based on work completed . . . under the subcontract" within seven days. A.R.S. § 32-1129.02(B) (2011). A construction contract cannot alter the rights of a subcontractor to receive "prompt and timely payments" as provided in the Act. A.R.S. § 32-1129.01(P) (2011).

**¶22**        The Act explicitly applies to "subcontractors" and defines a subcontractor as "any person, firm, partnership, corporation, association or other organization, or a combination of any of them, that has a direct contract with a contractor or another subcontractor to perform a portion of the work under a construction contract." A.R.S. § 32-1129(A)(6) (2010). The Act defines a "construction contract" as "a written or oral agreement relating to the construction, alteration, repair, maintenance, moving or demolition of any building, structure or improvement or relating to the excavation of or other development or improvement to land." A.R.S. § 32-1129(A)(1) (2010). The parties do not dispute that the Contract is a "construction contract" under the Act. But FSNE argues Trap-Zap is not a "subcontractor" within the meaning of the Act because it is not licensed by

---

[1] Because the Arizona Legislature amended statutes relevant to this case in Title 32 during the pendency of this appeal, *see* 2019 Ariz. Sess. Laws 145 (1st Reg. Sess.), we apply and cite to the law in effect when this case began. For other statutes where no material change has occurred, we cite to the most recent version.

the Arizona Registrar of Contractors ("ROC"). Thus, we must determine if the Act applies to subcontractors not licensed by the Arizona ROC—such as Trap-Zap—when those subcontractors perform work outside of Arizona.

**¶23**　　　　We review de novo issues of statutory interpretation. *Obregon v. Indus. Comm'n*, 217 Ariz. 612, 614, ¶ 9 (App. 2008). Trap-Zap argues that because the Act clearly and unambiguously defines its scope, we need not resort to other methods of statutory interpretation because the legislature's intent is readily discernable. Here, while the definitions do not expressly limit the scope of the Act to contractors licensed by the Arizona ROC, other provisions of the Act imply that limitation. *See* A.R.S. § 32-1129.02(B) (2011) ("Any diversion by the contractor or subcontractor of payments received for work performed pursuant to a contract . . . constitutes grounds for disciplinary action by the registrar of contractors."). We construe a statute in context with other related provisions and its place in the statutory scheme. *State v. Flynt*, 199 Ariz. 92, 94, ¶ 5 (App. 2000). When interpreting a statute, our primary goal is to "discern and give effect to legislative intent." *People's Choice TV Corp. v. City of Tucson*, 202 Ariz. 401, 403, ¶ 7 (2002). "'Although the statute's language is the best and most reliable index of the statute's meaning,' when we cannot be certain about the scope of a statute, we must 'apply methods of statutory interpretation that go beyond the statute's literal language' to determine the legislature's intent." *RSP Architects, Ltd. v. Five Star Dev. Resort Cmtys., LLC*, 232 Ariz. 436, 438, ¶ 9 (App. 2013) (quoting *Blake v. Schwartz*, 202 Ariz. 120, 126, ¶ 29 (App. 2002)). We do so by "considering [the statute] as a whole and giving harmonious effect to all of its sections." *Id.* "Statutes relating to the same subject matter should be read *in pari materia* to determine legislative intent and to maintain harmony." *Washburn v. Pima County*, 206 Ariz. 571, 575, ¶ 10 (App. 2003) (quoting *Goulder v. Ariz. Dep't of Transp. Motor Vehicle Div.*, 177 Ariz. 414, 416 (App. 1993)).

**¶24**　　　　Trap-Zap argues it is entitled to the Act's protections because it contracted with FSNE to perform repair and maintenance work. We disagree. Reading the entire subsection of § 32-1129.02(B), the legislature intended the payment obligations to apply only to licensed contractors and subcontractors who are subject to the Arizona ROC's strict requirements. Section 32-1129.02(B), which requires payment from a contractor to a subcontractor within seven days, also provides that "[v]iolations of this section shall be grounds for suspension or revocation of a license or other disciplinary action by the registrar pursuant to § 32-1154, subsections B, C, and D." Section 32-1154 sets out the procedure and grounds for the ROC to suspend, cancel, or revoke a contractor's license and impose civil penalties on contractors under its control. A.R.S. § 32-1154 (2018).

¶25 If we were to adopt Trap-Zap's proposed meaning of "subcontractor," the Act would apply to *any* subcontractor, rendering the second part of this subsection—directing the ROC to penalize violations of the Act—meaningless. The ROC has no authority to take disciplinary action against a contractor who does not hold a license in Arizona. *See, e.g.*, A.R.S. §§ 32-1101 to -1107; *Beazer Homes Ariz., Inc. v. Goldwater*, 196 Ariz. 98, 100, ¶¶ 11–12 (defining the jurisdiction of the ROC); *see also PAM Transp. v. Freightliner Corp.*, 182 Ariz. 132, 133 (1995) ("[W]e attempt to give 'meaningful operation' to all provisions of a statute.").

¶26 Similarly, in *RSP Architects Ltd. v. Five Star Development Resort Communities, LLC*, this court held the Act does not apply to a contract for architectural services. 232 Ariz. at 437, ¶ 1. This court reasoned in part that "the Prompt Payment Act . . . implies that a 'contractor' within the meaning of the act must be licensed by the Registrar of Contractors." *Id.* at 439, ¶ 16. Because the Act falls within Article 32, titled "Licensing," and the penalty for a contractor failing to pay a subcontractor for work performed pursuant to the contract is subject to discipline by the ROC, —and because architects "need not obtain a contractor's license" before performing architectural work—we held that the legislature did not intend for the Act to apply to architects. *Id.* Like the architect in *RSP*, Trap-Zap is not licensed by the ROC and therefore is not entitled to utilize the Act's protections of prompt payment for licensed contractors.

¶27 Trap-Zap's contractual obligations were not performed in Arizona and Trap-Zap is not a licensed contractor in Arizona. Because we conclude § 32-1129.02 applies only to contractors and subcontractors licensed in Arizona, we affirm the court's dismissal of Trap-Zap's claim under the Act, and the higher 18% interest rate prescribed in the Act should not apply.

## III.   Attorney Fees

¶28 The court granted Trap-Zap's application for attorney fees and costs under A.R.S. §§ 12-341 and 12-341.01 and awarded Trap-Zap $77,185 in legal fees, $3,867.96 in legal research fees, and $3,068.20 in taxable costs. FSNE asks that the award of fees be vacated and remanded for the court to reconsider the issue of the prevailing party following this court's decision. We review the superior court's decision to grant a party's request for attorney fees for an abuse of discretion. *Vicari v. Lake Havasu City*, 222 Ariz. 218, 224, ¶ 23 (App. 2009). The superior court found Trap-Zap was the successful party because, although FSNE was "successful in defeating some of Trap-Zap's claims," overall Trap-Zap was successful on the most

significant portion of its claim and judgment was entered in Trap-Zap's favor. *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189 (App. 1983) ("[W]here a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories."). Because we affirm the superior court's judgment, we find no abuse of discretion in the award of fees.

¶29 Both parties request attorney fees on appeal pursuant to A.R.S. § 12-341.01(A). Because Trap-Zap is the prevailing party, *see China Doll*, 138 Ariz. at 189, and its claims arose out of contract, we grant its request for attorney fees on appeal under A.R.S. § 12-341.01, and also award costs to Trap-Zap upon compliance with ARCAP 21. *See* A.R.S. § 12-341.

## CONCLUSION

¶30 For the foregoing reasons, we affirm the superior court's grant of summary judgment in favor of Trap-Zap for breach of contract and concurrent denial of FSNE's motion for summary judgment on illegality. We also affirm the court's dismissal of Trap-Zap's claim under the Arizona Prompt Payment Act.



AMY M. WOOD • Clerk of the Court
FILED: AA