[Civ. No. 9524.   Third Dist.   June 25, 1959.]

HERBERT FENOLIO et al., Respondents, v. JAMES McDONALD et al., Appellants.

William J. Mahaney and Ira M. Shadwell for Appellants.

Vladimir Vucinich and William Berger for Respondents.

PEEK, J.—The present controversy arises out of the sale of a bar and restaurant business which in turn resulted in actions being filed by both parties. The plaintiffs, by their action, sought to recover from defendants on two promissory notes which formed a part of the consideration, while the defendants, in their action, sought to rescind the agreement upon the ground of fraud. By stipulation the actions were consolidated. The court found in favor of plaintiffs in both actions and entered judgment accordingly. Defendants appeal solely from the judgment in favor of plaintiffs in their action on the two promissory notes, no appeal having been taken from the judgment in the action instituted by defendants.

The record shows that plaintiffs, under the name of the Circle DBF Dude Ranch, Inc., operated a bar and restaurant business in Fall River Mills. All of the stock of the corporation stood in the name of plaintiff Herbert Fenolio. He testified that he operated the business as an individual. The defendants had purchased a building and bar business in the town of Burney known as the Park Club. In order to obtain an "On-Sale General Liquor License" they called upon plaintiffs and entered into negotiations for the purchase of plaintiffs' business and license. Subsequently plaintiffs agreed to sell and defendants agreed to buy the license and tangible

510

assets of the corporation for the sum of $40,000, plus whatever the inventory was worth. Pursuant to this agreement, two promissory notes were executed—one in the sum of $12,000 and the other in the sum of $28,875, the $875 being the value of the inventory. Additionally, an "interim agreement" was prepared and signed by both of the parties. Thereafter all of the physical assets and the liquor license were moved to the defendants' place of business at the Park Club.

The defendant James McDonald stated that he desired to keep the corporation alive since the license was in its name and hence no transfer would be required. The defendants also desired to keep the corporation alive so that they might revaluate the stock certificates after transferring the assets of the Park Club to the corporation. It was further suggested by defendant James McDonald to plaintiff Fenolio that he remain as president of the corporation with the defendants being named as new directors. This was represented to Fenolio as being an additional protection to him in receiving the balance of his money. While Fenolio did participate to a degree in the conduct of the business of the corporation following the transaction, he testified that whatever acts he did were performed at the request of and as a favor to the defendant McDonald.

The primary contention of defendants is predicated upon section 1705 of the Corporations Code which provides in part as follows: "A corporation shall not purchase directly or indirectly any shares issued by it . . ." except under certain circumstances not involved herein. Therefore, they argue, since the interim agreement specifically provides for the doing of the very act denounced by said section, the agreement is void and the court should not aid in the enforcement of such a contract and the parties should be left where the court finds them.

The agreement reads as follows:

"This Agreement entered into this first day of April, 1955, by and between Herbert J. Fenolio and his wife, Dorothy, and James McDonald and his wife, Dorothea, hereinafter known as the McDonalds and the Fenolios.

"WHEREAS: The Fenolios are the sole owners of the stock in the Circle DBF Dude Ranch, Inc., which stock represents the on-sale liquor license, furniture, fixtures, and liquor and food inventory.

"WHEREAS: It is contemplated that the said corporation will purchase and retire the stock held by the Fenolios at the rate

of $125.00 per month, plus 6% interest per annum on said liquor license worth $12,000 to be retired first, after which subsequent payments be applied to furniture and fixtures at the rate of $125.00 per month with no interest until the total of $40,000.00, plus liquor inventory, has been paid, except that any balance due said Fenolios, above payments hereinafter made, after an eight year period shall become due and payable by said McDonalds.

"WHEREAS: In consideration of Fenolios selling their stock to the corporation, McDonalds agree to guarantee payments.

"Now, THEREFORE, it is mutually agreed as follows:

"1. Fenolios hereby agree to sell their stock in the Circle DBF Dude Ranch, Inc. to the corporation at a rate of $125.00 per month at an interest rate of 6% per annum on $12,000.00 to be paid monthly, interest on the unpaid balance to be reduced annually.

"2. The Fenolios hereby accept and recognize a cash payment of $2,500.00 to be applied in part to liquor inventory and the balance of which sum shall be applied toward the reduction of said $40,000.00 capital.

"3. In the event of default of the corporation to make any payment, or payments, which are required under the terms of this agreement, the McDonalds shall make payment and the said stock shall be issued to the McDonalds in place and stead of the corporation.

"4. The McDonalds herewith agree that at the end of eight years, upon the signing of this agreement, to purchase from the Fenolios the remaining stock of the corporation still held by the Fenolios.

"5. The Fenolios agree to furnish the corporation with a closing statement of the Circle DBF Dude Ranch, Inc., as of March 31, 1955, to be rendered not later than December 31, 1955."

Where it is urged that a contract is illegal and unenforceable as being in violation of a statute, the court should examine with care the statute involved so as to give effect to the fundamental purpose of the Legislature and to a wise public policy. (*Ferguson* v. *Schuenemann,* 167 Cal.App.2d 413, 417 [334 P.2d 668].) In *Hammond* v. *Haskell,* 14 Cal.App. 522 [112 P. 575], a factual situation similar to that posed in the instant case was presented to the court which enunciated the further rule that: "Conceding that such interpretation would render the contract invalid, nevertheless, this

512

contract is susceptible of the construction that under its terms the defendants were making a purchase of the stock upon their own account and directing the delivery to the corporation for their benefit. 'Where a contract is capable of two constructions, the one making it valid and the other void, . . . the first ought to be adopted.' [Case cited.]'' (P. 526.)

■ And in the case of *Norwood* v. *Judd*, 93 Cal.App.2d 276, 288-289 [209 P.2d 24], the court held: ''The rule that the courts will not lend their aid to the enforcement of an illegal agreement or one against public policy is fundamentally sound. The rule was conceived for the purposes of protecting the public and the courts from imposition. It is a rule predicated upon sound public policy. But the courts should not be so enamored with the Latin phrase '*in pari delicto*' that they blindly extend the rule to every case where illegality appears somewhere in the transaction. The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.''

■ The precise question here involved was also discussed in the case of *Tiedje* v. *Aluminum Taper Milling Co.*, 46 Cal. 2d 450 [296 P.2d 554], and the court (at p. 455) held that: ''. . . the restriction on the corporation's purchase of its own shares was enacted for the benefit of the corporation as a whole, its creditors and stockholders other than the participating stockholder.''

Certainly defendants do not occupy the position of those who belong to a class for whose protection the statute here in question was enacted. They were not stockholders nor creditors of the corporation at the time the interim agreement was made, nor could the financial structure of the corporation have been misrepresented to them as a result of the agreement, since the purchase price had been determined prior to the execution of the agreement. Defendants were dealing with a ''one man corporation.'' ■ ''It has been repeatedly held that in such a case, the sole owner may do what he will with the assets and credit of the corporation and no one but creditors may complain.'' (*Scales* v. *Holje*, 41 Cal.App. 733, 737 [183 P. 308].)

Defendants further urge that the corporate stock was issued contrary to the provisions of the permit issued by the Division of Corporations, and being void could not furnish the basis for the judgment. It is argued that the stock was not issued in compliance with the provisions of section 26100 of the Corporations Code. However, the findings of the trial court, as explained by its memorandum decision, show clearly that the court considered the stock as incidental to the overall transaction. As was explained by the court, the consideration for the two notes was the actual sale and delivery of possession of the liquor business, its assets, license, stock in trade, fixtures, etc. It would thus appear to follow that even conceding that the transfer was void, the agreement as the court noted was not such an integral part of the entire transaction as to provide a basis for vitiating the contract. (See *Tevis* v. *Blanchard,* 122 Cal.App.2d 731, 738 [266 P.2d 85]; *Swinney* v. *Legg,* 129 Cal.App. 476, 477-478 [18 P.2d 970].)

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.