436 P.2d 490

**Feliz RUELAS, Appellant,**

**v.**

**P. R. RUELAS, Victoria Ruelas Quijada, Matilde Ruelas Hagey, and David Ruelas, Appellees.**

**No. 2 CA–CIV 454.**

Court of Appeals of Arizona.

Jan. 23, 1968.

Rehearing Denied Feb. 27, 1968.

Review Denied March 19, 1968.

Perry, Coulter & Head, Phoenix, by, Allan K. Perry, for appellant.

Wolfe & Greer and J. C. Padilla, Tucson, by, David K. Wolfe, for appellee P. R. Ruelas.

Carlos G. Robles, Tucson, for appellees Quijada and Hagey.

MOLLOY, Judge.

This appeal presents the question of whether a state court may in a partition action determine the ownership of federal grazing permits and whether an oral trust agreement to hold a grazing permit for the benefit of a non-owner of cattle is enforceable in view of pertinent federal regulation that requires all grazing permittees to own the cattle grazed under the permit.

A civil action was brought by one of the appellees, P. R. Ruelas ("Placido"), against his brother, appellant Feliz Ruelas ("Feliz") and the remaining appellees, a brother and two sisters, as defendants, to partition certain real and personal property, including certain grazing authorizations issued by the United States Department of Agriculture, Forest Service. The parties were alleged to proportionately own the following interests in all of the property described in the complaint:

| | |
|---|---|
| P. R. RUELAS | —UNDIVIDED ⅓ INTEREST |
| FELIZ RUELAS | —UNDIVIDED ⅓ INTEREST |
| MATILDE RUELAS HAGEY | —UNDIVIDED ⅑ INTEREST |
| VICTORIA RUELAS QUIJADA | —UNDIVIDED ⅑ INTEREST |
| DAVID RUELAS | —UNDIVIDED ⅑ INTEREST |

The federal grazing permits which are the only property in controversy here cover approximately 23,000 acres of land to the southeast of Tucson, Arizona. The answer of the defendant Feliz alleged the subject grazing leases to be solely his property.

Prior to August 2, 1956, one Cleofe Ruelas, the mother of all parties to this action, was the sole owner of what was known as the "Ruelas Ranch." Included in her ownership and used in connection with this cattle ranching operation were some 1,100 acres of patented land, improvements thereon, certain water rights and certain federal grazing permits or leases including those in dispute in this action. The ranch was operated as an informal partnership, Cleofe furnishing the properties, including cattle, with Felix and Placido doing the work.

In 1956, Cleofe executed two deeds of gift to Feliz and Placido each of an undivided one-third interest in the Ruelas ranch

properties. These deeds purportedly[1] included " * * * an undivided one-third interest in and to any State and Federal grazing leases owned and held by Cleofe Ruelas." The federal grazing leases, however, remained in the name of Cleofe as far as the records of the Forest Service were concerned.

Cleofe died testate in 1958, and that part of her estate which included her one-third interest in the Ruelas ranch was distributed in equal parts to her other children, David Ruelas, Victoria Ruelas Quijada, and Matilde Ruelas Hagey. This distribution gave these three appellees each an undivided one-ninth interest in the Ruelas ranch and its adjunct properties, including if this distribution was effective as to the grazing permits,[2] the same ownership in these permits.

In December of 1964, Placido sold all of his interest in the livestock and brand of the Ruelas ranch to his brothers and sisters, resulting in Feliz owning one half, and, Victoria, Matilde and David owning one-sixth interest each in the livestock and the brand.

In early 1965, Feliz applied to the Department of Agriculture for the issuance to him and his wife of the grazing permits which had stood in his mother's name, and these applications were granted. In connection with these applications, appellees Quijada, Hagey, and David Ruelas each signed a formal "waiver" of "any right, title, or interest" they had in the permits which had been issued to their mother. Placido executed no such waiver.

In their answers to the complaint, the other brother and two sisters took issue with Placido's claims of a one-third ownership in these permits but on appeal all appellees agree the oral trust enforced by the trial court was one in which Placido had an interest proportionate to his interest in the Ruelas ranch patented land. There is evidence to support this position and none to gainsay it. Among such is the testimony of one of the sisters[3] that Feliz agreed to hold the grazing permits "for the use of the ranch for the benefit of all of us."

The lower court held that when appellant renewed the two subject grazing permits in his own name, he "acquired the same in trust, insofar as and for the respective interests of the plaintiff and the other defendants are concerned." The court ordered the property partitioned in the proportions alleged in the complaint.

## STATE COURT JURISDICTION TO ESTABLISH TRUST AS TO FEDERAL GRAZING PERMIT

█ The contention of appellant that the trial court had no jurisdiction to enforce this oral trust is answered by Stevens v. Stevens, 70 Ariz. 302, 219 P.2d 1045 (1950). The court in *Stevens* held that the trial court had not erred in decreeing that the plaintiff had an undivided one-half interest in a Forest Service grazing permit held

1. The appellant has attempted to question the effectiveness of the transfer from Cleofe to her sons of an interest in the grazing leases of which she was the named permittee and also the effectiveness of the distribution of these permits out of her estate. This attack is based on the non-assignable provisions in both permits. We do not regard the validity of these transfers to be a necessary predicate for affirmance and hence leave the question unanswered. The judgment on review pertains only to the permits acquired by Feliz some years after his mother's death and, as we view the matter, the decree rendered is supportable on the basis of an oral trust agreement, regardless of the ownership of Cleofe's permits.

In passing, we note that assignment of "non-assignable" contracts are ordinarily enforced between assignor and assignee. See Restatement of Contracts § 176, at 226 (1932); and Frank Sullivan Company v. Midwest Sheet Metal Works, 335 F.2d 33, 39 (8th Cir. 1964). See also Bassett v. Ryan, 72 Ariz. 383, 387, 236 P.2d 458, 460 (1951), holding that these permits are " * * * legitimate objects of contract * * *."

2. See note 1, supra.

3. Testimony of Victoria Quijada, at 73 of R.T.

in another's name and in ordering the nominal permittee to take all necessary action to cause this moiety to be transferred to the plaintiff. The plaintiff's interest in *Stevens* arose because the permit was acquired in a husband's name during marriage and the permit had not been distributed to either husband or wife at the time of their divorce some years before. By the time of the subsequent action, the ex-wife (plaintiff) had long since removed her one half of the cattle from the land covered by the permit. While the case history of the undivided interest in *Stevens* is obviously different from the case at bar, we see no difference in the jurisdictional posture of the two cases. We follow *Stevens* in holding that, while the decree rendered in this case may not be binding upon the government, it is binding upon the parties, *inter sese*.

## ILLEGALITY OF TRUST AGREEMENT

Again, we believe the appellant's contention is answered by *Stevens*, as the plaintiff in that case, as here, had no interest in the cattle grazed under the permit which was apportioned by the judgment. But, inasmuch as this aspect of illegality received scant attention in *Stevens*, we discuss it briefly.

The federal regulations which govern the granting of grazing permits require that the permittee " * * * own both the livestock to be grazed and commensurate property * * * " in order to qualify for a grazing permit. 36 C.F.R. § 231.3(b) (1) (i). We recognize that this regulation has the force and effect of law. Osborne v. United States, 145 F.2d 892 (9th Cir. 1944).

■ Generally, an agreement which cannot be performed without violating applicable law, is illegal and void. 17 Am.Jur. 2d Contracts § 165, at 521; 17 C.J.S. Contracts § 201, at page 1000. This rule, however, is not inflexible, and the court must look to the legislative intent. Fenolio v. McDonald, 171 Cal.App.2d 508, 340 P.2d 657 (1959); Wilson v. Stearns, 123 Cal. App.2d 472, 267 P.2d 59 (1954).

It is the law in Arizona that:

" * * * parties have the legal right to make such contracts as they desire to make, provided only that the contract shall not be for illegal purposes or against public policy." (Emphasis added) S. H. Kress & Co. v. Evans, 21 Ariz. 442, 449, 189 P. 625, 627 (1920).

See also, Galbraith v. Johnston, 92 Ariz. 77, 81, 373 P.2d 587 (1962); Commercial Standard Insurance Co. v. Cleveland, 86 Ariz. 288, 293, 345 P.2d 210 (1959).

■ We see no immoral or reprehensible motive in back of this oral trust agreement. Testimony indicates that a permit has an economic value which affects the value of the patented land to which the permit' is an adjunct.[4] While Placido at the time of trial had no interest in the cattle then grazed on the Ruelas ranch, it is obviously within the range of possibility that he may in the future acquire an interest in cattle so as to make use of his property and at this time he could fully comply witth federal regulations. We see no reason why in the partition of this property an equitable right to require a transfer of an appropriate interest in these grazing leases could not be established as to the parties to this action. What effect this judgment may have upon the United States Government is not in litigation here.

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

4. Testimony of Clyde Doran, Forest Supervisor of Coronado National Forest, at 124–26 of R.T.