IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

GREEN CROSS MEDICAL, INC., an Arizona non-profit corporation,
*Plaintiff/Appellant*,

*v.*

JOHN V. GALLY, Trustee of the John V. Gally Family Protective Trust,
dated January 11, 1993, *Defendant/Appellee*.

No. 1 CA-CV 16-0019
FILED 4-18-2017

Appeal from the Superior Court in Navajo County
No. S0900CV201200208
The Honorable Ralph E. Hatch, Judge

**REVERSED AND REMANDED**

COUNSEL

Aspey Watkins & Diesel PLLC, Flagstaff
By Whitney Cunningham, John W. Carlson
*Counsel for Plaintiff/Appellant*

Hunter Humphrey & Yavitz PLC, Phoenix
By Isabel M. Humphrey, Randall S. Yavitz
*Counsel for Defendant/Appellee*

---

## OPINION

Judge Donn Kessler delivered the opinion of the Court, in which Presiding Judge Peter B. Swann and Judge Kent E. Cattani joined.

---

**K E S S L E R**, Judge:

¶1 Appellant Green Cross Medical ("Green Cross") appeals the superior court's summary judgment dismissing its breach of contract complaint against John V. Gally, Trustee of the John V. Gally Family Protective Trust ("Gally"). We hold that the lease between Gally and Green Cross to permit Green Cross to operate a medical marijuana dispensary was not void from its inception, and to the extent Green Cross is seeking damages for the breach, the lease was enforceable. Accordingly, we remand for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL HISTORY

¶2 The relevant facts are undisputed. Gally is the owner of commercial property located in Winslow, Arizona ("Property"). In 2012, Gally entered into a lease agreement with Green Cross for the Property to allow Green Cross to operate a medical marijuana dispensary. The lease provided that there was an "application first term" allowing Green Cross to lease the property until it was issued a dispensary operating license from the State of Arizona. The lease did not specify how long the application first term would run, but it provided for an increase in the rent once the first term ended.

¶3 Less than two weeks after entering into the lease, Green Cross received a letter from Gally's attorney stating that Gally was revoking the lease. Green Cross filed this breach of contract complaint, a motion for a temporary restraining order ("TRO"), and a motion for a preliminary injunction. Gally argued that he was required to revoke the lease because a prior month-to-month lessee who had wanted to operate a medical marijuana dispensary on the Property allegedly had a superior interest in the Property. The superior court issued the TRO and later a preliminary injunction, barring Gally from revoking the lease. Gally appealed that decision and the superior court stayed further proceedings pending the appeal. We affirmed the superior court's orders. *Green Cross*

*Medical, Inc. v. Gally*, 1 CA-CV 12-0610, 2013 WL 5435817 (Ariz. App. Dec. 31, 2013) (mem. decision).

¶4             On remand, the parties filed cross-motions for summary judgment.  For the first time in the superior court, Gally argued that he was entitled to judgment as a matter of law because the lease was illegal and therefore unenforceable.  Green Cross did not obtain the necessary permission under the Arizona Medical Marijuana Act, Arizona Revised Statutes ("A.R.S.") §§ 36-2801, *et seq.* ("AMMA"),[1] to operate a medical marijuana dispensary.[2]  However, Green Cross sought partial summary judgment on liability for possible damages for Gally's revocation of the lease.  The superior court denied Green Cross's motion and granted Gally's, holding that the lease violated both federal and state law and was therefore void for illegality.  Green Cross timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes § 12-2101(A)(1) (2016).

## DISCUSSION

¶5             We review a grant of summary judgment de novo as an issue of law.  *Acosta v. Phx. Indem. Ins. Co.*, 214 Ariz. 380, 381, ¶ 2 (App. 2007) (citation omitted).  We will affirm if there are no disputed issues of material fact and the prevailing party is entitled to judgment as a matter of law, viewing the facts in the light most favorable to the party against whom summary judgment was entered.  *Id.* (citations omitted).  Additionally, we review issues of statutory construction and interpretation de novo.  *Stein v. Sonus USA, Inc.*, 214 Ariz. 200, 201, ¶ 3 (App. 2007) (citation omitted).

¶6             The issue presented is whether a contract for the lease of real property to a party applying to operate a medical marijuana dispensary is void for illegality.  The superior court held that the lease was illegal under state law for, "among other things, production of marijuana and conspiracy to sell or transfer marijuana."  Additionally, the superior court

---

[1]      We cite to the current versions of any statute unless the statute was amended after the pertinent events and such amendment would affect the result of this appeal.

[2]      For a detailed explanation of how an applicant for a medical marijuana dispensary can obtain permission to operate under the AMMA, *see White Mountain Health Ctr., Inc. v. Maricopa County*, 241 Ariz. 230, 233-34, ¶¶ 3-7 (App. 2016).

found that the lease agreement violated the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* ("CSA"). Specifically, the court cited 21 U.S.C. § 856(a)(1)-(2) (2003), which states:

> [I]t shall be unlawful to—knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance; manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

¶7         At the time Gally terminated the lease, Green Cross had not received the necessary permission to operate a dispensary. But the lease permitted Green Cross to sublease the Property— a valuable commercial right that existed independent of any concerns over the legality of medical marijuana. And nothing in the lease suggested it would be void or voidable if Green Cross did not receive a license to run a dispensary.

¶8         We find no statute, state or federal, that bars leasing property to a person or business that is applying for a license to run a medical marijuana dispensary under the AMMA with a right to sublease. Even assuming, arguendo, that the operation of a dispensary would have violated federal law, the right to sublease was a valuable property right that involves no controversy over its legality. As such, Green Cross can seek damages for the loss of the lease.

¶9         Gally argues that Green Cross is not entitled to any damages, asserting that the lease was void from the outset because it would have violated state and federal law if Green Cross ever used the Property for an AMMA-compliant medical marijuana dispensary. Accordingly, we will address the interplay between state and federal law to determine if Gally can be liable for any damages to Green Cross. The

issue is one of first impression in Arizona, and there are conflicting superior court decisions on this issue.[3]

I.      Illegality Under State Law

**¶10**        We conclude the lease is not illegal under Arizona law for several reasons.  First, the AMMA protects the rights of dispensaries to enter into leases and contracts if they are in compliance with the AMMA. Section 36-2811(E) provides that a registered nonprofit medical marijuana dispensary is

> not subject to prosecution . . . *and may not be denied any right or privilege . . . by a court* or . . . entity, for acting pursuant to [the AMMA] and department regulations to acquire, possess, cultivate, manufacture, deliver, transfer, . . . sell or dispense marijuana or related supplies . . . to . . . qualifying patients [or] . . . designated caregivers.

A.R.S. § 36-2811(E) (2010) (emphasis added).  The ability to enforce a lease or contract is a right or privilege under Arizona law, subject only to reasonable regulation by the government when a public interest is involved.  *Schrey v. Allison Steel Mfg. Co.*, 75 Ariz. 282, 286-87 (1953). Parties have the legal right to make whatever contracts they desire, subject to liability for their breach except when "the acts to be performed under the contract are themselves illegal or contrary to public policy, or if the legislature has clearly demonstrated its intent to prohibit maintenance of a cause of action, then recovery should be denied."  *E & S Insulation Co. of Ariz., Inc. v. E.L. Jones Const. Co.*, 121 Ariz. 468, 470 (App. 1979).   That limitation, however, is not inflexible and the court must look to the legislative intent.  *Ruelas v. Ruelas*, 7 Ariz. App. 98, 101 (1968) (citations omitted).  Given the language of the AMMA, a court may not void or refuse to enforce a dispensary's lease with a landlord simply because the

---

[3]      *Compare Hammer v. Today's Health Care II*, Nos. CV 2011-051310 and -051311 (Maricopa Cty. Super. Ct. Apr. 17, 2012) (holding dispensary contract void as illegal) *with Weiss v. Fortin*, No. CV 2013-00278 (Maricopa Cty. Super. Ct. Sept 20, 2013) (holding dispensary contract enforceable under AMMA).

dispensary would be supplying marijuana in compliance with the AMMA.[4]

¶11 Second, while Gally correctly notes that no provision of the AMMA expressly lists landlords as entitled to immunity for leasing property to authorized dispensaries, we will not interpret a statute in a manner that would lead to an absurd result. *City of Phoenix v. Superior Court In & For Maricopa County*, 101 Ariz. 265, 267 (1966) (citations omitted). The AMMA provides protection against arrest and prosecution for qualifying patients, caregivers, physicians, providers, and dispensaries so long as they are in compliance with the AMMA and administrative rules promulgated under the AMMA. *See* A.R.S. § 36-2811. An interpretation that allows a dispensary to lease premises for use compliant with the AMMA, but authorizes the State to prosecute a landlord leasing property to a dispensary compliant with the AMMA (or a court to void an AMMA-compliant lease) would render the statute futile and violate A.R.S. § 36-2811(E). If the State is prohibited from acting directly, it cannot circumvent the law by acting indirectly to obtain the same result. *See Danielson v. Evans*, 201 Ariz. 401, 409, ¶ 27 (App. 2001) (citations and quotations omitted). Accordingly, Gally's proposed interpretation of the AMMA as not providing immunity for landlords would lead to an absurd result and is untenable. We therefore reject it.

---

[4] Gally cites *State v. Cheatham*, 237 Ariz. 502 (App. 2015), for the conclusion that the AMMA does not decriminalize marijuana possession or use, but only provides immunity for such possession or use consistent with the AMMA. *Id.* at 504-05, ¶ 9. Thus, he argues that since there is no express immunity for landlords renting to dispensaries, the lease here is still in violation of the AMMA. That reliance is misplaced for several reasons. First, *Cheatham* was vacated by the Arizona Supreme Court after Gally's answering brief was filed. *State v. Cheatham*, 240 Ariz. 1 (2016). Second, as the supreme court noted, the only issue in *Cheatham* was whether the smell of marijuana supported probable cause for a search after enactment of the AMMA. *Id.* at 3, ¶¶ 9-10. *Cheatham* has no bearing on the AMMA's provisions for AMMA-compliant dispensaries; the AMMA prohibits a court from denying any right or privilege to an entity "acting pursuant to [the AMMA] and department regulations to acquire, possess, cultivate, manufacture, deliver, transfer, . . . sell or dispense marijuana or related supplies . . . to . . . qualifying patients or . . . designated caregivers." A.R.S. § 36-2811(E). Third, as we explain *infra*, ¶¶ 11-12, the State may not prosecute landlords for renting property compliant with the AMMA.

**¶12** This conclusion is reinforced by the fact that to operate under the AMMA, a dispensary must certify to the Arizona Department of Health Services that it has a secured facility and that the dispensary has permission from the landowner to operate a dispensary. *See* A.R.S. § 36-2804(B)(1) (2010) (providing that the department shall register a dispensary if, *inter alia*, the prospective dispensary shows it has a physical address for the dispensary and for cultivation of marijuana); Ariz. Admin. Code R9-17-304(C)(7)(a) (2012) (requiring documentation of permission from owner of the physical address of the proposed dispensary). When a statute is silent or ambiguous on a specific issue, we defer to the implementing agency's interpretation of the statute if the agency's construction is a permissible construction even if it is not the most reasonable construction. *Kobold v. Aetna Life Ins. Co.*, 239 Ariz. 259, 262, ¶ 9 (App. 2016) (citations omitted). To ensure proper administration of the AMMA and protect the public interest, the department is empowered to ensure that any property to be used as a dispensary has the landowner's authorization and to adopt implementing rules. A.R.S. § 36-2803(A) (2016). To hold that a court can void or refuse to enforce an otherwise enforceable dispensary lease authorized by the AMMA and the implementing regulations simply because the property would be used as a dispensary—in compliance with the AMMA—would violate those regulations, lead to an absurd result, and frustrate the purpose of the statute.[5]

**¶13** Gally argues that despite the passage of the AMMA, under Arizona law a landlord could still be prosecuted for accomplice liability, conspiracy liability, and facilitation liability.[6] The criminal statutes for conspiracy, accomplice, and facilitation liability each require that a criminal offense be attached to the action in some way. *See* A.R.S. §§ 13-

---

[5] Indeed, taken to its logical conclusion, if a court could void or refuse to allow a damages action for breach of a lease to a compliant dispensary based solely on the proposed use of the property, it could also void a sale of property to a dispensary. Similarly, such a conclusion would allow dispensaries who wanted to get out of their leases to simply bring an action to void the lease ab initio, leaving the landlords at risk of loss.

[6] Gally also argues that even if the lease were legal under the AMMA, the AMMA is preempted by the CSA. That argument was made before our decision in *White Mountain*, which held that the CSA does not preempt the AMMA. *White Mountain*, 241 Ariz. at 237-57, ¶¶ 25-56.

1003(A) (2016) ("A person commits conspiracy if, with the intent to promote or aid the commission of an offense . . ."); 13-1004(A) (2016) ("A person commits facilitation if, acting with knowledge that another person is committing or intends to commit an offense . . ."); 13-303(A)(1) (2008) ("The person is made accountable for [another's criminal] conduct by the statute defining the offense . . ."). Gally could not lawfully be prosecuted for any of these underlying crimes because running a medical marijuana dispensary in compliance with the AMMA is not an offense. *Cheatham*, 240 Ariz. at 3 ¶ 9 (holding the "AMMA has made the possession and use of marijuana lawful for medicinal purposes under the terms and conditions set forth in that Act").

¶14 Gally also argues that a landlord could be prosecuted for the possession, use, or sale of marijuana. However, nothing in the lease even suggests that Gally would be using, selling, or possessing marijuana simply because he leased the Property to a dispensary compliant with the AMMA.

¶15 We emphasize that nothing in the AMMA requires a landlord to rent a property to a proposed dispensary. Gally was free not to enter into the lease if he was uncomfortable with the proposed use of the Property. But once he chose to do so, he was not free to rescind his contractual commitments without facing potential monetary liability. Accordingly, leasing property to a medical marijuana dispensary that is in compliance with the AMMA is not illegal under Arizona law. Thus, the superior court erred when it found the lease was void and dismissed the complaint seeking damages for the breach.

II. Federal Illegality

¶16 Gally also argues and the superior court held that the lease was illegal under the CSA. As we explained in *White Mountain Health Ctr., Inc. v. Maricopa County*, 241 Ariz. 230 (App. 2016), the sale and use of marijuana for medical purposes is illegal under federal law. *Id.* at 238, ¶ 30; *see also United States v. McIntosh*, 833 F.3d 1163, 1167 (9th Cir. 2016) (reiterating that "the CSA prohibits what the State Medical Marijuana Laws permit"). Similarly, it is illegal under the CSA to lease property knowing it would be used for the illegal production or distribution of controlled substances. *See* 21 U.S.C. § 856(a)(1)-(2).

¶17 However, that does not render the contract in this case unenforceable under all circumstances. "[E]ven where contracts concern illegal objects, where it is possible for a court to enforce a contract in a way

that does not require illegal conduct, the court is not barred from according such relief." *Mann v. Gullickson*, 2016 WL 6473215, *7 (N.D. Cal. Nov. 2, 2016). Thus, just as Arizona law notes that the rule of voiding illegal contracts is flexible and we must look to the legislative intent, *Ruelas*, 7 Ariz. App. at 101, other courts have held that before voiding a contract on the basis that it violates a statute, the court must consider the policy behind the statute and whether voiding the agreement will result in a disproportionate forfeiture, unjust enrichment, windfalls, and deterrence of illegal conduct. *Mann*, 2016 WL 6473215 at *6-7 (collecting cases). The court must also weigh the relative moral culpability of the contracting parties. *Id.*

¶18 Here, in analyzing whether the lease was void ab initio we find persuasive the reasoning in *Mann* and *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 832-33 (D. Colo. 2016). In *Mann*, the issue was whether a contract to sell a business that involved consulting for medical marijuana dispensaries and related businesses and selling plant growing equipment and related information was void for illegality under federal law. *Mann*, 2016 WL 6473215 at *1-2. Even though those activities were legal under state law, the buyer refused to pay on the notes owed to the seller and sought to dismiss the seller's breach of contract action on the grounds that the contracts were void ab initio for violation of federal law. *Id.* at *2. The court rejected that argument, concluding that the contract related to lawful activity under California law, and federal policy on medical marijuana authorized by states was in a state of flux. *Id.* at *7-8. The court also held that requiring the buyer to pay the notes would not require her to violate the CSA because the buyer was not required under the note to possess or sell marijuana in violation of federal law. *Id.* As to the third factor of disproportionate forfeiture and unjust enrichment, the court reasoned that voiding the note would be contrary to state policy on medical marijuana because California, like other states, had authorized use, possession, and distribution of medical marijuana for the health of their residents. *Id.* at *9. The court also found that the buyer understood upon signing the contract that possession, sale, and use of marijuana was prohibited by the CSA so that the moral culpability factor could equally lie with both parties. *Id.* The court also weighed the effect on the public if the contract was found to be void. It noted that such a holding would encourage other potentially illicit conduct such as the nonpayment for services rendered pursuant to a contract. *Id.*

¶19 Similarly, in *Green Earth*, the court rejected a claim that a commercial insurance policy protecting a retail medical marijuana

business was unenforceable. *Green Earth*, 163 F. Supp. 3d at 823. The plaintiff in that case had purchased commercial insurance for its medical marijuana business. *Id.* The plaintiff later filed claims for smoke and ash damage from a nearby wild fire and for theft of some of its product. *Id.* When the insurer denied those claims, the plaintiff sued the insurer on a number of grounds including breach of contract. *Id.* The court rejected the insurer's assertion that in light of the CSA, it would be illegal to pay for the plaintiff's damages. The court noted that the United States had shown an ambivalence in prosecuting medical marijuana cases when the use or distribution was authorized by state law, and it was doubtful the plaintiff would be prosecuted. *Id.* at 832-33. The court concluded that the parties had entered into the policy of their own will, knowingly and intelligently, and given the lack of clear and consistent federal public policy in the area, the insurer was obligated to comply with the contract. *Id.*

**¶20**        Here, balancing the federal government's interest in enforcing the CSA with Arizona's interest in effectuating the AMMA leads us to conclude that the contract action seeking damages is not barred simply because the lease would violate the CSA. As to public policy, *Mann* explained federal policy as to medical marijuana has been in flux for years. *Mann*, 2016 WL 6473215 at *4. As Green Cross pointed out, beginning in 2009, before this lease was signed, the United States Department of Justice had instructed United States Attorneys not to prosecute persons acting in compliance with state medical marijuana laws. Similarly, as we noted in *White Mountain*, 241 Ariz. at 246-47, ¶ 54, in 2016, Congress barred the Department of Justice from using any funding to prosecute people using or distributing medical marijuana in compliance with state laws. Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, 129 Stat. 2242 (2015). Pursuant to that act, the Department of Justice may not use any of its funding "with respect to . . . Arizona . . . to prevent [it] from implementing [its] own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." *Id.* at § 542, 2332–33. The United States Court of Appeals for the Ninth Circuit has held that the Appropriations Act prohibits the Department of Justice from interfering with the implementation of such laws not simply by suing states with medical marijuana laws, but also by prosecuting private individuals under the CSA for conduct compliant with the state medical marijuana law in their jurisdiction. *McIntosh*, 833 F.3d at 1176–78. Thus, while the lease might technically be in violation of 21 U.S.C. § 856(a)(1)-(2), Congress has, for the time being, forbidden enforcement of that section for all purposes relevant to this case.

¶**21**         In contrast, Arizona voters passed the AMMA to allow such use and distribution and prevented denials of rights and privileges related to compliant medical marijuana distribution and use.  Given the federal government's lack of interest in prosecuting individuals in compliance with the AMMA, as well as a public policy that favors enforcement of the lease compliant with state law, the purported illegality here does not render the lease void as illegal, at least for purposes of a damages action.[7] *Cf. Reed-Kaliher v. Hoggatt*, 237 Ariz. 119, 124, ¶ 21 (2015) (noting that by prohibiting AMMA-compliant marijuana use, a trial court would not be authorizing or sanctioning a violation of federal law, but merely recognizing the statutory limit on the court's authority to impose probation conditions).

---

[7]         In response to our request for further briefing, Gally contends that the Appropriations Act's ban on use of federal funds to enforce prohibitions against medical marijuana when the actions are compliant with state medical marijuana laws might not survive into the next Congressional term.  However, we cannot predict the future and must apply the law as it exists at the time we render our decision barring a manifest injustice.  *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 711 (1974).  We find no manifest injustice in holding Gally to his contract with Green Cross for purposes of damages.  If Congress ends the ban on such actions and the Department of Justice decides to prosecute persons operating in compliance with state medical marijuana laws, such action might affect the length of time for which damages can be sought, but that does not support voiding the lease from its inception.

Gally also contends in his Supplemental Brief that the Appropriations Act limitation was passed after he had breached the lease and should have no bearing on his decision not to want to abide by a lease in violation of the CSA.  As we note, prior to the lease being signed, the Department of Justice had already decided not to bring prosecutions for conduct compliant with state medical marijuana laws.  The Appropriations Act merely codified that policy.  Moreover, Gally was more than willing to lease to a dispensary in violation of the CSA when he knew that the lease violated federal law.  Indeed, he was willing to lease it on two different occasions to two different AMMA dispensary applicants.  He cannot later escape liability for his breach.  Nor does Gally cite to us any authority that merely by possibly being liable for damages for breaching such a lease he would be subject to criminal liability under 21 U.S.C. § 856(a)(1)-(2).

¶22        Second, just as in *Mann* and *Green Earth*, allowing a damage action for wrongful termination of the lease would not be requiring persons to violate the CSA.  It would only be enforcing Green Cross's contract rights under the lease at least for an award of damages.

¶23        Third, voiding leases relating to property used for medical marijuana dispensaries could lead to unjust enrichment or an unconscionable windfall for the person who breaches the lease.  The lessee-dispensary might incur damages from the futile development of the property and certainly would have relied on the lease for its application to run a dispensary under the AMMA.  To allow a landlord carte blanche to void the lease simply because it might violate the CSA, even though the landlord knew the proposed use of the land when he entered the lease, would undermine the sanctity of contracts and leave a dispensary without a remedy for any monetary losses caused by the breach.  Conversely, it would allow lessees to breach leases when it suited their needs to relocate.

¶24        Fourth, there is no question of moral responsibility here. Both parties knew the purpose for which the land would be used under the lease if Green Cross obtained the necessary approval from the Department of Health Services.  Moreover, Gally was not surprised that the land would be put to that use since his initial argument against enforcement of the lease was that another proposed medical marijuana dispensary had a superior interest in the Property.

¶25        Accordingly, we conclude that enforcing the lease at least for purposes of a damages action is appropriate.  Such an approach is consistent with state law and the policies behind the AMMA, would enforce the right of contract for dispensaries or applicants for dispensaries, would deter wrongful breaches of leases with persons who had leased the premises for AMMA-compliant purposes, and would avoid unjust enrichment by a party seeking to terminate such a lease after gaining the benefit of the lease.

III.    Restatement (Second) of Contracts

¶26        Our conclusion that the court erred in dismissing a damages action for a breach of the lease is further supported by the Restatement (Second) of Contracts § 178 (1981), which sets forth factors to consider when applying the common law doctrine of illegality.  Those factors include the parties' justified expectations regarding the contract, as well as the legislative and public policy interests in enforcing or not enforcing the terms of the contract.

¶27         Here, to void the lease at issue for illegality so as to preclude a breach of contract action for damages would be contrary to the parties' contemplated expectations and would contradict both the legislative intent and public policy underlying the AMMA. The use of medical marijuana under the AMMA requires dispensaries, and dispensaries require contracts, including lease agreements. To hold dispensary leases void ab initio because they involve lawful distribution of medical marijuana under state law could make the AMMA futile and undermine the policy behind it.

¶28         Finally, there is a strong public interest in enforcing contracts and leases compliant with state law. Otherwise, parties to a lease of this nature could feel free to breach the lease after gaining advantage from it. This is especially true for dispensaries who have to certify that the lease and property is appropriate and authorized for dispensary use.

¶29         In applying these factors, we recognize there is a tension between the CSA and the AMMA because the CSA still criminalizes the sale, use, or possession of medical marijuana whereas the AMMA offers immunity and protections for those persons operating in compliance with the AMMA. Nevertheless, refusing to enforce such contracts would undermine the medical marijuana program the voters approved. Enforcing such contracts leaves the federal government in the same position it has chosen with respect to medical marijuana in Arizona. If the federal government wishes to end such programs by enforcing the CSA, it has the power to do so provided Congress permits use of federal funds to conduct such prosecutions and the Department of Justice desires to bring such actions. We conclude the lease was enforceable at least for purposes of a damages action for its breach.

**CONCLUSION**

**¶30**          For the foregoing reasons, we reverse the superior court's judgment and remand for further proceedings consistent with this ruling. We grant Green Cross's request for taxable costs and attorneys' fees incurred on appeal under A.R.S. §§ 12-341 and 12-341.01 upon timely compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA