NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RASHAAD GREGORY, *Plaintiff/Appellant*,

*v.*

KIA MOTORS CORPORATION, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0559
FILED 8-20-2020

Appeal from the Superior Court in Maricopa County
No. CV2015-004389
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Shumway Law, PLLC, Phoenix
By G. Lynn Shumway

Ghelfi Law Group, PLLC, Phoenix
By Brent Ghelfi
*Co-Counsel for Plaintiff/Appellant*

Bowman and Brooke, LLP, Phoenix
By Paul G. Cereghini, Lori A. Zirkle, Travis M. Wheeler, Amanda E. Heitz
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Jennifer B. Campbell joined.

---

**C A T T A N I**, Judge:

¶1        Rashaad Gregory appeals from the defense judgment in favor of Kia Motors Corporation, Kia Motors America, Inc., and Autoamerica Corporation f/d/b/a Peoria Kia (collectively, "Kia") on Gregory's product liability claim and the denial of Gregory's motion for a new trial. For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Gregory was sitting in the right rear seat of a 2007 Kia Spectra when the car was involved in a high-speed collision with another car. Although he was wearing a seatbelt, Gregory suffered serious physical injuries including an atlanto-occipital dislocation (separation of the skull from the C1 vertebra) and abdominal injuries stretching from his right side around to his back.

¶3        Gregory brought a product liability claim against Kia alleging that the Spectra's rear seat pan had a defective and unreasonably dangerous design. According to Gregory's experts, the downward taper of the Spectra's rear seat pan did not provide sufficient pelvic control during the crash, allowing the right half of his body to "submarine" under the lap belt. Gregory's experts opined that submarining allowed the lap belt to move off Gregory's pelvic bone and onto his abdomen, resulting in his right-side abdominal injury, and allowed the shoulder belt to catch Gregory's neck as his body slid down and forward.

¶4        Kia denied any defect and offered (among other experts) a biomechanics expert, Dr. Robert Banks, who opined that: Gregory did not submarine under the lap belt, Gregory's head position before the collision resulted in the shoulder belt catching his neck during the forward stage of the crash, and his right-side abdominal injury was caused by contact with the armrest on rebound after the seat belt stopped his forward motion.

¶5        After a 12-day trial, the jury rendered a unanimous defense verdict. The superior court entered judgment in favor of Kia, and after the

court denied Gregory's motion for new trial, Gregory timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1), (5)(a).

**DISCUSSION**

**I.     Disclosure Issue.**

**¶6**          Gregory first argues that Kia withheld new opinions and exhibits used by Dr. Banks until just a few weeks before trial and that the superior court erred by allowing Kia to present such untimely disclosed opinions and materials at trial. We review the superior court's discovery and disclosure rulings for an abuse of discretion, and we will not reverse absent a showing that the error resulted in substantial prejudice. *Link v. Pima County*, 193 Ariz. 336, 338, ¶ 3 (App. 1998); *Town of Paradise Valley v. Laughlin*, 174 Ariz. 484, 487 (App. 1992).

**¶7**          Dr. Banks addressed kinematics and causation of Gregory's injuries. He authored his report in November 2016 and was first deposed in March 2017. Discovery closed on March 31, 2017, with trial set to begin in June 2018. In April 2018, however, Kia's accident reconstruction and vehicle seat design expert passed away unexpectedly. The court continued the trial to January 2019 and reopened discovery, albeit without an express scheduling order.

**¶8**          Over the months that followed, the parties deposed three new experts—Kia's new reconstruction and seat design experts and Gregory's new radiologist—and again deposed testifying liability experts. Dr. Banks's second deposition was originally set for November 8, 2018, 60 days before trial was to begin. Dr. Banks's deposition was postponed twice because of scheduling conflicts in a different case. In the interim, in response to inquiries from Gregory's counsel about whether Dr. Banks's opinions had changed, Kia's counsel responded, "Dr. Banks's fundamental conclusions have not changed, but he has additional bases for his conclusions in response to the numerous disclosures and depositions since his original deposition," including responding to developments in Gregory's experts' opinions and incorporating the opinions of Kia's new reconstruction and seat design experts. Dr. Banks's second deposition ultimately went forward on December 12, 2018, 27 days before trial was to begin.

**¶9**          The next day, Gregory filed a motion to preclude as untimely disclosed a modified kinematics opinion and a new surrogate study and related materials purportedly first provided at Dr. Banks's second deposition. Gregory later requested leave to use materials from a National

Highway Transportation Safety Administration ("NHTSA") side-impact crash-test to rebut Dr. Banks's kinematics opinion should the motion to preclude be denied. The superior court ruled on the motions during trial, before Dr. Banks testified, denying the motion to preclude but granting Gregory's request to use the NHTSA materials.

**¶10** After judgment on the defense verdict against him, Gregory moved for a new trial. He asserted that Dr. Banks's purportedly new opinion about Gregory's movement during the crash, a new free particle analysis, use of a SketchUp 3D digital model, and the new surrogate study provided at Dr. Banks's second deposition constituted "significant, all-encompassing disclosure violations" resulting in "extreme prejudice" to Gregory and warranting a new trial. Noting the earlier ruling on Gregory's pretrial motion to preclude Dr. Banks's opinion and materials on the same basis, the court denied the motion for new trial.

**¶11** On appeal, Gregory raises the same argument: Dr. Banks provided a new kinematics opinion and new exhibits including a free particle study, a 3-D modeling "simulation," and a new surrogate study at his second deposition, only 27 days before trial, and the superior court erred by declining to preclude the new information as untimely disclosed. We disagree.

**¶12** Arizona's disclosure rules are designed to ensure that each side receives a "reasonable opportunity to prepare for trial." *Zimmerman v. Shakman*, 204 Ariz. 231, 235, ¶ 13 (App. 2003) (citation omitted); *see also* Ariz. R. Civ. P. 26.1(e)(1). To that end, Rule 26.1 requires prompt and continuing disclosure of experts' opinions and reasoning, the facts or data underlying those opinions, and any supporting exhibits. Ariz. R. Civ. P. 26.1(d)(4)(B)–(D), (f). Absent a scheduling order to the contrary, discovery closes no later than 60 days before trial. *See* Ariz. R. Civ. P. 26.1(f)(2). Material not timely disclosed under Rule 26.1 generally may not be used at trial "[u]nless the court specifically finds that such failure caused no prejudice or orders otherwise for good cause." Ariz. R. Civ. P. 37(c)(1), (4). The superior court has broad discretion to assess whether a disclosure violation has occurred, as well as the practical effect of any non- or untimely disclosure. *See Solimeno v. Yonan*, 224 Ariz. 74, 77, ¶ 9 (App. 2010).

**¶13** The critical flaw in Gregory's position is his insistence that the challenged testimony and exhibits were materially different than Dr. Banks's previously disclosed materials and opinions. They were not.

¶14 First, Gregory asserts that Dr. Banks changed his fundamental opinion about Gregory's movement in the vehicle during the crash. He asserts that by doing so, Kia added a new expert opinion on liability well after the 60-day deadline had passed, leaving him no opportunity to investigate and prepare rebuttal. *See Link*, 193 Ariz. at 340, ¶ 11.

¶15 During his first deposition, Dr. Banks testified that Gregory's forward motion would be "just a few degrees left of straight ahead," and once restrained, "the vehicle would continue to yaw at fairly rapid rate and he would continue to go to the left. And my interpretation of that evidence is that he went forward, he curved left, and then down as he flexed into the shoulder belt." At the second deposition, Dr. Banks clarified that his previous description was "correct within an earth-based reference frame, but it is not correct within a vehicle-based reference frame," which the first deposition had not made clear. Dr. Banks then explained that relative to the car, which was rotating from right to left, Gregory's movement began as "forward with just a touch of left, predominantly forward during the whole period, and then a touch of right" as he reached the end of the seat belt's restraint.

¶16 Despite the minor variance in frame of reference, Dr. Banks repeatedly made clear—both at the second deposition and later at trial— that neither his "basic kinetics and kinematics opinions" nor his interpretation of the mechanism of Gregory's injuries had changed from those expressed at his first deposition—that is, the variation was not material to his opinions. Properly understood, the "basic substance [of Dr. Banks's testimony] remained the same," even if his description was not identical, meaning the variation did not constitute a disclosure violation. *See Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, 427, ¶¶ 8–9 (App. 2003).

¶17 Moreover, Gregory does not explain how the variation prejudiced his case. He had a full opportunity to explore the matter during the second deposition, and he highlighted perceived differences to impeach Dr. Banks on cross-examination during trial. *See Gosewisch v. Am. Honda Motor Co.*, 153 Ariz. 389, 396 (App. 1985), *vacated in part on other grounds*, 153 Ariz. 400 (1987) ("[V]ariations are not uncommon with witnesses, especially expert witnesses, and the usual way to handle such variations is by means of cross-examination."). Even in his post-trial motion for a new trial, Gregory failed to delineate any matter to which his experts were unable to respond or any other way the trial would have been different if Dr. Banks's varied testimony had been disclosed earlier.

¶18            Second, Gregory objects to the free particle analysis prepared by Kia's new accident reconstructionist at Dr. Banks's request and considered by Dr. Banks. But Gregory fails to point to any differences between this free particle analysis and the one performed by Kia's original accident reconstructionist and disclosed years earlier. To the contrary, both Dr. Banks and Gregory's biomechanics expert agreed that the two were "virtually the same."

¶19            Third, Gregory asserts that Dr. Banks relied on a never-before-disclosed computer simulation to demonstrate Gregory's movement during the crash. But Dr. Banks disclosed at his first deposition—in March 2017—his intent to present a digital 3D model (rendered in SketchUp software) to demonstrate Gregory's positions during the crash. And Gregory's only claim that the substance of the 3D model reflected new information is a 2-inch upward movement as Gregory's head came forward during the first part of the crash, which was elicited by Gregory's counsel. And in any event, that supposedly new movement was simply a measurement of the arc of the mark that Dr. Banks opined was left by Gregory's head moving forward during the crash, which was itself a long-disclosed basis for Dr. Banks's opinion.

¶20            Finally, Gregory argues that the superior court should have excluded the new surrogate study completed less than a week before Dr. Banks's second deposition. But Gregory does not meaningfully explain what new information was included in the new surrogate study—which, as the court described it, was a "few photographs of the new model in the back seat of the car that was described as being closer to [Gregory's] size." Nor has Gregory shown any prejudice from its admission, especially given its limited use and Gregory's biomechanics expert's ability to critique it at trial. *Cf. Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 449 (1982) (noting that ability to address exhibit at trial undermines generic assertion of prejudice from insufficient disclosure).

¶21            Accordingly, because the opinions and exhibits that Gregory claimed were untimely disclosed were not materially different from Dr. Banks's previously disclosed materials and opinions, and because they were subject to cross examination, the superior court did not err by allowing their use at trial over Gregory's objection.

## II.    Evidentiary Issues.

¶22            Gregory challenges the superior court's denial of his motions in limine seeking (1) to prohibit any mention of Gregory's post-accident

medical marijuana use and (2) to preclude evidence of Kia's compliance with Federal Motor Vehicle Safety Standards ("FMVSS") and of the 2007 Kia Spectra's five-star rating under NHTSA's New Car Assessment Program ("NCAP"). We generally review the court's ruling on motions in limine for an abuse of discretion, *Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 133, ¶ 33 (App. 2008), but review de novo matters of statutory construction and other issues of law. *Green Cross Med., Inc. v. Gally*, 242 Ariz. 293, 295, ¶ 5 (App. 2017).

### A.    Medical Marijuana.

**¶23**         Before trial, Gregory moved to prohibit any reference to his post-accident use of medical marijuana as a sleep aid. Gregory asserted that any such reference would constitute a "penalty" or "denial of any right or privilege" in violation of the protections provided by the Arizona Medical Marijuana Act ("AMMA"). *See* A.R.S. § 36-2811(B)(1). He further asserted that the evidence should be precluded under Arizona Rule of Evidence 403 because any marginal relevance would be substantially outweighed by the danger of unfair prejudice associated with illegal drug use. The court denied his motion.

**¶24**         On appeal, Gregory again contends that, because a juror "might view [him] negatively" due to his medical marijuana use, admission of such evidence constituted an improper penalty under the AMMA and was unfairly prejudicial under Rule 403. But Gregory understates the relevance of the information and overstates the risk of prejudice.

**¶25**         Gregory's use of medical marijuana was relevant to his claim for future medical costs: although Gregory testified that he preferred to use only medical marijuana and not other prescription medications, Gregory's damages expert included the expense of other medications in his anticipated life care plan. *See* Ariz. R. Evid. 402. Gregory offers only speculation that a biased juror might misuse the evidence of lawful marijuana use, *see* Ariz. R. Evid. 403, and he had an ample opportunity to expose any such prejudice during voir dire. *Cf. Evans v. Mason*, 82 Ariz. 40, 46 (1957) (noting that voir dire provides an opportunity to "determine the real state of [prospective jurors'] minds so that a fair and impartial jury can be chosen"). For the same reason, Gregory's speculation about jurors' possible biases does not establish that admission of evidence of Gregory's lawful marijuana use somehow constituted a "penalty" or "denial of any right or privilege" in violation of the AMMA. *See* A.R.S. § 36-2811(B)(1).

### B.     Federal Safety Standards and Ratings.

¶26         Before trial, Gregory moved to preclude evidence of Kia's compliance with FMVSS, the "minimum standards" required of any vehicle sold in the United States.  49 U.S.C. § 30102(a)(9); *see also id.* § 30103(e) (providing that compliance with a FMVSS does not provide exemption from potential common law liability).  Gregory argued that such evidence was irrelevant and risked unfair prejudice because compliance with the minimum standards would not prove the vehicle free from defects and because no FMVSS governed the rear seat pan, the specific design feature he alleged was defective.  Gregory similarly moved to preclude evidence that the 2007 Kia Spectra received a NCAP five-star frontal-crash rating, arguing that such evidence was irrelevant and unfairly prejudicial because the crash test did not address rear passenger safety and jurors might misuse it as a governmental "stamp of approval."  The superior court denied both motions.

¶27         Gregory urges the same arguments on appeal.  But he fails to acknowledge that, even though neither FMVSS compliance nor NCAP five-star frontal-crash rating was *dispositive* of the issue, both were *relevant* to whether the risks outweighed the benefits of the Spectra's rear seat pan design—as part of the Spectra's overall structure—rendering the design defective and unreasonably dangerous.  *See Dart v. Wiebe Mfg., Inc.*, 147 Ariz. 242, 245 (1985) (assessing whether a design is "defective and unreasonably dangerous" by assessing whether the dangerous or harmful aspects of the design outweigh the benefits of the design).  As described at trial, although no FMVSS governed the rear seat pan specifically, such requirements applied to other aspects of the rear seat, and the rear seat pan was just one facet of an integrated rear seat design calculated to meet those safety standards.  And a design change yielding a higher crash rating for the 2007 Spectra as compared to prior versions suggests an improvement in overall safety, even though it does not prove the design is not unreasonably dangerous.

¶28         Moreover, Gregory had the opportunity to—and did in fact—highlight the lack of a federal standard directly related to the rear seat pan and the difference between FMVSS compliance and absence of a defect.  Because both FMVSS compliance and NCAP rating bear on the relative benefits of the rear seat pan design, *see* Ariz. R. Evid. 402, and absent any suggestion of unfair prejudice, the superior court did not err by admitting this evidence at trial.

## CONCLUSION

¶29        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA